[No. 34853-1-I. Division One. February 12, 1996.]

THE STATE OF WASHINGTON, *Respondent*, v. TOMMY
QUENTON SMITH, *Appellant*.

*Kimberly N. Gordon* of *Washington Appellate Project,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Deborah A. Dwyer, Deputy,* for respondent.

Cox, J. — Twice in 1993, an undercover police officer purchased rock cocaine from Tommy Smith. Both times the officer wore a body wire to record the drug transactions. Before each transaction, a police agency issued written authorization to record the expected communication. Each request for authority to record described the expected location where the recording was to be made as the greater Seattle-King County area. Smith challenges the sufficiency of the descriptions of expected locations in the authorizations to record. Because one of the descriptions was sufficient but the other was not, we affirm in part and reverse in part.

Detective T. E. Kettells of the Eastside Narcotics Task Force worked undercover to determine whether Smith was selling cocaine. Kettells first contacted Smith in April 1993.

At about 8:30 P.M. on April 27, 1993, Kettells and Smith spoke by telephone and agreed to a drug sale. They arranged to meet in about 40 minutes at Smith's apartment to complete the transaction. Just after the call, undercover officers sought authorization to allow Kettells to record the planned sale by wearing a body wire. The authorization to record did not include any reference to the fact that the expected location of the transaction to be recorded was Smith's apartment. Rather, the request stated the expected location was the greater Seattle-King County area. The Eastside Narcotics Task Force issued the authorization to record at 9:00 P.M. Kettells arrived at Smith's apartment with the concealed body wire and bought $100 of rock cocaine from Smith. Transcripts of this drug transaction were used as evidence at trial.

During the early evening of June 17, 1993, Kettells and Smith spoke by phone several times to arrange another drug sale. By the end of their first call they had not agreed

on a sale, but did agree to speak again. At this point, undercover officers again requested authority from the Eastside Narcotics Task Force to record the planned transaction. The agency authorization used exactly the same description of the expected location as it did in the April request: the greater Seattle-King County area. At 9:05 P.M., the agency issued written authorization to record. At 10:13 P.M., Kettells and Smith spoke again and arranged to meet at a Jack-in-the-Box in Kirkland. When Kettells arrived at the meeting place, Smith directed him to another location a short distance away. When they arrived at the new location, Kettells purchased $100 of rock cocaine from Smith and gave the arrest signal to waiting undercover officers. The transcripts of the phone calls and the ultimate sale were used as evidence at trial.

The State charged Smith with two counts of delivery of cocaine. Count 1 was based on the April 27 sale. Count 2 was based on the June 17 sale. The trial court denied Smith's motion to suppress the tapes. Smith then stipulated to the State's evidence, and the court found him guilty as charged. Smith appeals.

## I

### EXPECTED LOCATION

Smith first argues that neither agency authorization specified the expected location and approximate time of the communications to be recorded. Both details are required by RCW 9.73.230(2)(e). We agree that the description of the expected location of one of the drug transactions was not sufficient under the statute.

■ At the suppression hearing, Smith objected to admission of the tapes because the authorizations failed to state an expected location for the transactions more specific than the entire jurisdiction of the police department. He did not object on any other basis. Thus, his argument with respect to the sufficiency of the description of the expected location of the communication to be recorded is preserved

for appeal. Any argument he now makes on appeal respecting the alleged absence of approximate time in the authorization is not.[1]

Washington's privacy act[2] generally prohibits the recording of private conversations without the consent of all parties to the conversations. The act does allow the recording of conversations concerning controlled substances without such consent, provided the conditions set forth in the act are met.

Law enforcement agencies may issue authorizations to record conversations as part of a bona fide criminal investigation. RCW 9.73.230(2) provides:

> The agency's chief officer or designee . . . shall prepare and sign a written report at the time of authorization indicating:
>
> . . .
>
> (e) The details of the particular offense . . . and the *expected . . . location . . .* of the conversation or communication. . . .

(Italics ours.) There are no cases construing what is necessary to meet the statutory requirement to disclose the expected location of the conversation or communication to be recorded.

 Statutory construction is a question of law subject to de novo review.[3] The primary objective of statutory construction is to carry out the intent of the Legislature by examining the language of the statute.[4] Words are given their plain meaning unless a contrary intent ap-

---

[1]RAP 2.5(a). *See, e.g., State v. Scott,* 110 Wn.2d 682, 685, 757 P.2d 492 (1988).

[2]RCW 9.73.

[3]*Our Lady of Lourdes Hosp. v. Franklin County,* 120 Wn.2d 439, 443, 842 P.2d 956 (1993).

[4]*Stone v. Chelan County Sheriff's Dep't,* 110 Wn.2d 806, 809, 756 P.2d 736 (1988).

pears.[5] All provisions of an act must be considered in their relation to each other and, if possible, harmonized to ensure proper construction for each provision.[6] Strained, unlikely, or unrealistic consequences are to be avoided.[7] Likewise, appellate courts should not construe statutes "so as to render any portion meaningless or superfluous."[8]

■ We have previously held that law enforcement agencies must comply strictly with the requirements of RCW 9.73.230 for authorizations to be valid.[9] We reasoned that "[b]y including specific procedural instructions, the Legislature sought to limit abuse of what amounts to self-authorized electronic surveillance."[10]

Our inquiry here respecting the expected location of the communication to be recorded is: What did the police know and when did they know it? Detective Kettells' report on the April 27 drug sale indicates that he and Smith had a telephone conversation at 8:36 P.M. During that conversation, they agreed that Kettells should go to Smith's apartment to make the buy. At that point, the undercover officers requested authorization from the task force for the body wire.

The authorization indicates that the authorization was signed at 9:00 P.M. that same evening. It also states the following:

> Anticipated locations(s) [sic] of conversations or communications: To occur within an unknown area yet to be determined by the suspects or detectives; believed at this time to take place within the greater [S]eattle, [K]ing [C]ounty area.

Nowhere in the authorization is there any mention of the

---

[5]*In re Estate of Little*, 106 Wn.2d 269, 283, 721 P.2d 950 (1986).

[6]*Tommy P. v. Board of County Comm'rs*, 97 Wn.2d 385, 391, 645 P.2d 697 (1982).

[7]*State v. Fjermestad*, 114 Wn.2d 828, 835, 791 P.2d 897 (1990).

[8]*Stone*, 110 Wn.2d at 810.

[9]*State v. Gonzalez*, 71 Wn. App. 715, 718, 862 P.2d 598 (1993), *review denied*, 123 Wn.2d 1022 (1994).

[10]*Gonzalez*, 71 Wn. App. at 719.

fact that the police then expected to record the drug transaction in Smith's apartment. The April 27, 1993, authorization signed by the police official therefore fails to fulfill the statutory requirement to provide information as to the expected location of the communication to be recorded.

The State mischaracterizes Smith's argument by asserting that he urges us to construe the statute to impose a requirement that the police report the actual location of the communication to be recorded. The State then notes that proper authorizations are valid throughout the state. The State appears to argue that because police do not know in advance exactly where suspected narcotics crimes are to occur, they need not provide any more information than the general geographical description given here.

■ The State's argument misses the point. If all that is required for specifying the expected location is to state the entire jurisdiction of the police agency issuing the authorization, the requirement to report the expected location is superfluous. That is an impermissible result in statutory construction. Thus, the use of the type of boilerplate language used here to describe location is insufficient to meet the requirements of the statute.

We hold that the expected location required in the statutory report should reflect such information about the expected location of the communication to be recorded as is available to the police at the time they request the authorization. Accordingly, we reverse the portion of the judgment and sentence based on the April 27, 1993, authorization.

We next consider the application of these principles to the June 17, 1993, authorization. Kettells' report on the June 17 sale indicates that he and Smith had several telephone conversations early that evening. The agency authorization reflects that it was issued at 9:05 P.M. The transcripts of the various tapes reflect that Kettells did not know of the planned meeting place for the sale at a Jack-in-the-Box in Kirkland until 10:13 P.M., over an hour after the authorization was issued.

In contrast to the situation on April 27, here the police knew nothing more about the expected location at the time they applied for authorization of the body wire for this sale other than it was likely to be somewhere in King County. Thus, the description was sufficient under the statute for the June 17 authorization.

In both applications for the authorizations, the police included the same boilerplate language regarding the failure to give more detail about expected location. They stated:

> Drug transactions and investigations such as these are not subject to exactness with respect to time, location and persons involved. [R]ather, they are spontaneous and generally involve communications with multiple individuals before the substantive crime is actually committed. There is a certain randomness to the location of the controlled buy(s). Thus, we [cannot] safely attempt to pinpoint the location of . . . any meetings without endangering the success of the investigation.

While it may be true that ultimate locations for drug transactions are often unknown, this does not excuse the failure to comply with the requirements of the statute. The statute requires no more information than that which is available to the police when they apply for authorization to record conversation or communication. At oral argument, the State was unable to articulate why pinpointing an expected location might endanger the success of an investigation. The provision of the statute permitting authorizations to be valid statewide is sufficient to provide the police the flexibility to deal with the uncertainties they described in these two authorizations.

■ We must next decide whether the court's denial of the motion to suppress the April 27, 1993, tapes was harmless error. For harmless nonconstitutional error, the test

is whether, within reasonable probabilities, the outcome of the trial would have been materially affected if the error had not occurred.[11] The State argues that the error was harmless because the plain language of the statute states that a witness to a drug transaction who heard the defendant's statements without having to rely on a recording or listening device may still testify.[12] As a result, Kettells' testimony about the April 27 transaction would have been admissible and sufficient to convict Smith, and the only evidence excluded would have been the tape itself. We disagree.

 This court has held that "[i]f a police officer is party to an illegally recorded conversation, the officer cannot testify about the conversation or any visual observations or assertive gestures . . . ."[13] In *Jimenez*, we made it clear that an invalid authorization was the same as no authorization at all.[14] In *State v. Salinas*,[15] the state Supreme Court held that the "unaided testimony" language of RCW 9.73.230(8) does not permit the officer to testify about the transaction if the authorization itself is not properly obtained. Thus, any evidence obtained in connection with the illegal recording, including testimony by any of the officers involved, is inadmissible.

Here, Smith stipulated to the State's evidence after the trial court ruled the recordings admissible. Without the recordings and the testimony of the detective and officers who were involved in making them, the State has essentially no evidence. Thus, it is at least reasonably probable that the outcome of the trial would be altered by suppression. The error was not harmless.

---

[11]*State v. Braham*, 67 Wn. App. 930, 939, 841 P.2d 785 (1992).

[12]*See* RCW 9.73.230(8).

[13]*State v. Jimenez*, 76 Wn. App. 647, 653, 888 P.2d 744, *review granted*, 126 Wn.2d 1021 (1995) (citations omitted).

[14]*Jimenez*, 76 Wn. App. at 653.

[15]121 Wn.2d 689, 696, 853 P.2d 439 (1993).

## II

### MULTIPLE CONVERSATIONS

█ Smith argues that the evidence from the June 17 incident is inadmissible because the conversation during the actual transaction in Kirkland was one of several recorded that evening. He asserts that the statute allows recording only one conversation per authorization. Smith made no objection on that basis at trial. Thus, he failed to preserve that issue for review, the objection being statutory rather than constitutional.[16]

We reverse the portion of the judgment and sentence based on count 1 and affirm that portion based on count 2.

GROSSE and BECKER, JJ., concur.

Review granted at 129 Wn.2d 1022 (1996).

---

[16]RAP 2.5(a)(3). *See, e.g., Scott,* 110 Wn.2d at 685.