[No. 34853-1-I. Division One. March 17, 1997.]

THE STATE OF WASHINGTON, *Respondent*, v. TOMMY QUENTON SMITH, *Appellant*.

*Kimberly N. Gordon,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Deborah A. Dwyer, Deputy,* for respondent.

Cox, J. — We previously issued an opinion regarding the effect of police failure to comply with provisions of the privacy act when obtaining authorization to record conversations in a drug transaction.[1] Our Supreme Court granted the State's petition for review and remanded this case to us for reconsideration in light of the decision in *State v. Jimenez.*[2] We have reconsidered our prior decision and now affirm the judgment and sentence in its entirety.

In our prior decision, we held that a request for agency authorization to record must include such information about the expected location of the communication to be recorded as is available to police at the time of the request. We also held that the failure to include such information in the request barred a party to the recorded conversation from testifying about it or any visual observations or assertive gestures. Our holding was based, in part, on this court's decision in *State v. Jimenez.*[3]

On remand, Smith now claims the police failed to make a "genuine effort" to comply with the requirements of RCW 9.73.230. That theory is based on the Supreme Court's opinion in *Jimenez.* We now discuss both of the original counts, although we earlier affirmed the conviction for one of them.

---

[1]*State v. Smith*, 80 Wn. App. 535, 910 P.2d 508 (1996).

[2]*State v. Smith*, 129 Wn.2d 1022, 918 P.2d 916 (1996) (remanding for reconsideration, citing *State v. Jimenez*, 128 Wn.2d 720, 911 P.2d 1337 (1996)).

[3]76 Wn. App. 647, 888 P.2d 744 (1995), *rev'd*, 128 Wn.2d 720, 911 P.2d 1337 (1996).

Detective T. E. Kettells of the Eastside Narcotics Task Force worked undercover to determine whether Tommy Q. Smith was selling cocaine. Kettells first contacted Smith in April 1993.

At about 8:30 P.M. on April 27, 1993, Kettells and Smith spoke by telephone and agreed to a drug sale. From our examination of the authorization to record, the testimony of Detective Kettells, and other portions of the record, we conclude that they arranged to meet in about 40 minutes at Smith's apartment to complete the transaction. Just after the call, undercover officers sought authorization from the Eastside Narcotics Task Force to allow Kettells to record the planned sale by wearing a body wire. The authorization to record was issued at 9:00 P.M. but did not include any reference to the fact that the expected location of the transaction to be recorded was Smith's apartment. Rather, the request stated the expected location was "the greater [S]eattle, [K]ing [C]ounty area." Kettells arrived at Smith's apartment with the concealed body wire and bought $100 worth of rock cocaine from Smith. The recording was made at about 9:30 P.M. Transcripts of this drug transaction were used as evidence at trial.

During the early evening of June 17, 1993, Kettells and Smith spoke by phone several times to arrange another drug sale. By the end of their first call they had not agreed on a sale, but did agree to speak again. At this point, undercover officers again requested authority from the Eastside Narcotics Task Force to record the planned transaction. The agency authorization used exactly the same description of the expected location as it did in the April request: the greater Seattle-King County area. At 9:05 P.M., the agency issued a written authorization to record. At 10:13 P.M., Kettells and Smith spoke again and arranged to meet at a Jack-in-the-Box in Kirkland. When Kettells arrived at the meeting place, Smith directed him to another location a short distance away. When they arrived at the new location, Kettells purchased $100 worth of rock cocaine from Smith and gave the arrest signal to

waiting undercover officers. The transcripts of these phone calls and the ultimate sale were also used as evidence at trial.

The State charged Smith with two counts of delivery of cocaine. Count 1 was based on the April 27 sale. Count 2 was based on the June 17 sale. The trial court denied Smith's motion to suppress the tapes. Smith then stipulated to the State's evidence, and the court found him guilty as charged. Smith appealed, we affirmed in part and reversed in part, and the State petitioned for review. After remand of this case from our Supreme Court, Smith moved for accelerated review. A commissioner of this court granted that motion.

## I

## Expected Location

Smith first argues that neither agency authorization specified the expected location and approximate time of the communications to be recorded. Both details are required by RCW 9.73.230(2)(e). We agree that the description of the expected location of the April 27 drug transaction was not sufficient under the statute.

■ At the suppression hearing, Smith objected to admission of the tapes on the basis that both authorizations failed to state expected locations for the transactions more specific than the entire jurisdiction of the police department. He did not object on any other basis. Thus, his argument with respect to the sufficiency of the description of the expected location of the communication to be recorded is preserved for appeal. Any argument he makes on appeal regarding the alleged absence of approximate time in the authorization is not.[4]

Washington's privacy act[5] generally prohibits the recording of private conversations without the consent of all

---

[4]RAP 2.5(a). *See, e.g., State v. Scott,* 110 Wn.2d 682, 685, 757 P.2d 492 (1988).

[5]RCW 9.73.

parties to the conversations. The act does allow the recording of conversations concerning controlled substances without such consent, provided the conditions set forth in the act are met.

Law enforcement agencies may issue authorizations to record conversations as part of a bona fide criminal investigation.[6] RCW 9.73.230(2) provides:

> The agency's chief officer or designee . . . shall prepare and sign a written report at the time of authorization indicating:
>
> . . .
>
> (e) The details of the particular offense . . . and the *expected* . . . *location* . . . of the conversation or communication . . . .[7]

There are no cases construing what is necessary to meet the statutory requirement to disclose the expected location of the conversation or communication to be recorded.

 Statutory construction is a question of law subject to de novo review.[8] The primary objective of statutory construction is to carry out the intent of the Legislature by examining the language of the statute.[9] Words are given their plain meaning unless a contrary intent appears.[10] All provisions of an act must be considered in relation to each other, and, if possible, harmonized to ensure proper construction for each provision.[11] Strained, unlikely,

---

[6]RCW 9.73.230(1).

[7](Emphasis added.)

[8]*Our Lady of Lourdes Hosp. v. Franklin County*, 120 Wn.2d 439, 443, 842 P.2d 956 (1993).

[9]*Stone v. Chelan County Sheriff's Dep't*, 110 Wn.2d 806, 809, 756 P.2d 736 (1988).

[10]*In re Estate of Little*, 106 Wn.2d 269, 283, 721 P.2d 950 (1986).

[11]*Tommy P. v. Board of County Comm'rs*, 97 Wn.2d 385, 391, 645 P.2d 697 (1982).

or unrealistic consequences are to be avoided.[12] Likewise, appellate courts should not construe statutes "so as to render any portion meaningless or superfluous."[13]

■ We have previously held that law enforcement agencies must comply strictly with the requirements of RCW 9.73.230 for authorizations to be valid.[14] We reasoned that "[b]y including specific procedural instructions, the Legislature sought to limit abuse of what amounts to self-authorized electronic surveillance."[15]

Our inquiry here respecting the expected location of the communication to be recorded is: What did the police know and when did they know it? Detective Kettells' report, which was admitted during the suppression hearing and at trial, describes the April 27 drug sale and indicates that he and Smith had a telephone conversation at 8:36 P.M. During that conversation, they agreed that Kettells should go to Smith's apartment to make the buy. At that point, the undercover officers requested authorization from the task force for the body wire.

■ The record indicates that the authorization was signed at 9:00 P.M. that same evening. It also states the following:

> Anticipated locations(s) [sic] of conversations or communications: To occur within an unknown area yet to be determined by the suspects or detectives; believed at this time to take place within the greater [S]eattle, [K]ing [C]ounty area.

Nowhere in the authorization is there any mention of the fact that the police expected to record the drug transaction in Smith's apartment. The April 27, 1993 authorization signed by the police official therefore fails to fulfill the statutory requirement to provide information as to the expected location of the communication to be recorded.

---

[12]*State v. Fjermestad*, 114 Wn.2d 828, 835, 791 P.2d 897 (1990).

[13]*Stone*, 110 Wn.2d at 810.

[14]*State v. Gonzalez*, 71 Wn. App. 715, 718, 862 P.2d 598 (1993), *review denied*, 123 Wn.2d 1022 (1994), *overruled on other grounds by Jimenez*, 128 Wn.2d 720.

[15]*Gonzalez*, 71 Wn. App. at 719.

The State mischaracterizes Smith's argument by asserting that he urges us to construe the statute to impose a requirement that the police report the actual location of the communication to be recorded. The State then notes that proper authorizations are valid throughout the state. We understand this argument to mean that because police do not know in advance exactly where suspected narcotics crimes are to occur, they need not provide any more information than the boilerplate description given here.

The State's argument misses the point. If all that is required for specifying the expected location is to state the entire jurisdiction of the police agency issuing the authorization, the requirement to provide the expected location is superfluous. That is an impermissible result in statutory construction. Moreover, such a reading of the statute would undermine the clear Legislative intent to limit abuse of self-authorized electronic surveillance by the police. Thus, the use of the general language used here to describe location is insufficient to meet the requirements of the statute. We hold that the expected location required in the statutory report should reflect such information about the expected location of the communication to be recorded as is available to the police at the time they request the authorization.

We next consider the application of these principles to the June 17, 1993 authorization. Kettells' report on the June 17 sale indicates that he and Smith had several telephone conversations early that evening. The agency authorization reflects that it was issued at 9:05 P.M. The transcripts of the several tapes reflect that Kettells did not know of the planned meeting place for the sale at a Jack-in-the-Box in Kirkland until 10:13 P.M., over an hour after the authorization was issued.

In contrast to the situation on April 27, the police knew nothing more here about the expected location at the time they applied for authorization of the body wire for this sale other than it was likely to be somewhere in King County. Thus, the description of the June 17 transaction was sufficient under the statute.

In both applications for the authorizations, the police included the same boilerplate language regarding the failure to give more detail about expected location. They stated:

> Drug transactions and investigations such as these are not subject to exactness with respect to time, location and persons involved. [R]ather, they are spontaneous and generally involve communications with multiple individuals before the substantive crime is actually committed. There is a certain randomness to the location of the controlled buy(s). Thus, we [cannot] safely attempt to pinpoint the location of . . . any meetings without endangering the success of the investigation.

While it may be true that *ultimate* locations for drug transactions are often unknown, this does not excuse the failure to comply with the requirements of the statute by stating the *expected* location for the conversation to be recorded. The statute requires no more information than that which is available to the police when they apply for authorization to record conversations or communications. At oral argument, the State was unable to articulate why pinpointing an expected location might endanger the success of an investigation. The provision of the statute permitting proper authorizations to be valid statewide is sufficient to provide the police the flexibility to deal with the uncertainties that are inherent in drug transactions.

## II

### Genuine Effort

We must next decide whether the court's denial of the motion to suppress the April 27, 1993 tapes was harmless error. Those tapes were obtained on the basis of a request with an insufficient description of the expected location of the drug transaction. Thus, the authorization failed to conform to the requirements of the privacy act. Admission of those tapes at trial was therefore error.

■ Admission of those tapes at trial did not implicate

any constitutional issue. Thus, we consider whether this nonconstitutional error was harmless. The applicable test is whether, within reasonable probabilities, the outcome of the trial would have been materially affected if the error had not occurred.[16] Because the recording detective's testimony was admissible under *State v. Jimenez*,[17] the erroneous admission of the tapes was harmless.

In *Jimenez*, our Supreme Court held that "where law enforcement officers make a genuine effort to comply with the privacy act and intercept a private conversation pursuant to an RCW 9.73.230 authorization, the admissibility of any information obtained is governed by the specific provisions of RCW 9.73.230(8)."[18] That subsection provides that where police have failed to comply with the requirements for a valid agency authorization, the testimony of a party to the improperly recorded conversation is not barred due to the invalid authorization. In *Jimenez*, the police failed to include in the authorizations the names of the officers recording the transaction, thereby violating RCW 9.73.230(2)(c). Accordingly, the recordings were inadmissible. But any other evidence that did not depend on the recordings was admissible.[19]

Here, the officers who obtained the authorization failed to specify the expected location of the April 27 drug sale. That omission violated RCW 9.73.230(2)(e). The resulting recording is inadmissible. But Detective Kettells' detailed account of the transaction in his police report is not inadmissible due to that violation.

In his petition to this court for accelerated review in light of *Jimenez*, Smith argues that because the police department did not include in the authorization the information about the location that they then knew, they failed

---

[16] *State v. Braham*, 67 Wn. App. 930, 939, 841 P.2d 785 (1992).

[17] 128 Wn.2d 720.

[18] 128 Wn.2d at 726.

[19] *Jimenez*, 128 Wn.2d at 726.

to make a "genuine effort to comply" with RCW 9.73.230. We disagree.

In *Jimenez*, our Supreme Court accepted the State's argument that RCW 9.73.230(8) was intended to apply to cases when officers act in good faith under an invalid authorization.[20] For this reason, we read the court's use of the phrase "genuine effort to comply" to be equivalent to good faith.

The essence of Smith's argument is that police use of the boilerplate language to describe expected location of the conversation, without more, is a lack of good faith. But there is nothing in the record before us to suggest that the police intentionally or negligently omitted the information about expected location. The authorization includes the names of the officers authorized to record the conversation, the identity of the alleged offender, the details of the offense, an expected date and time, and a notation of whether the police attempted to obtain a judicial authorization. In short, it complies with all but one of the detailed requirements of RCW 9.73.230(2). The record does not demonstrate that the police failed to make a genuine effort to comply with the statutory requirements.[21] Therefore, the unaided evidence provision of RCW 9.73.230(8) controls.

Because Detective Kettells' account of the April 27 drug transaction is not inadmissible, it is unlikely that the result of the trial on that count would have been different in the absence of the recording. Thus, the error of admitting the recordings was harmless.

### III

### Multiple Conversations

Smith also argues that the evidence from the June 17

---

[20]*Jimenez*, 128 Wn.2d at 725.

[21]*See State v. Costello*, 84 Wn. App. 150, 155-56, 925 P.2d 1296 (1996) (finding genuine effort to comply with RCW 9.73.230 where authorization itself was invalid because of insufficient detail).

incident is inadmissible because the conversation during the actual transaction in Kirkland was one of several recorded that evening. He asserts that the statute allows recording only one conversation per authorization.

Smith made no objection on that basis at trial and therefore failed to preserve the issue for review.[22]

We affirm the judgment and sentence.

GROSSE and BECKER, JJ., concur.

Review denied at 132 Wn.2d 1010 (1997).

---

[22]RAP 2.5(a)(3). *See, e.g., Scott*, 110 Wn.2d at 685.