IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32707-8-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NATHAN TRACY MITCHELL, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Nathan Mitchell appeals his conviction for possession of

methamphetamine. He argues that probable cause did not support his arrest for driving

with a revoked license. That arrest led to law enforcement discovering the

methamphetamine. Nathan Mitchell also challenges features of his sentence. We affirm

all of the trial court's ruling and Mitchell's conviction and sentence.

## FACTS

During the morning of April 13, 2014, Washington State Patrol Trooper Troy

Corkins received a radio call reporting a one-car roll-over collision on westbound I-90 at

milepost 257. According to the reporting caller, Lisa Schorzman, the vehicle lay in the

median of the interstate and the driver, who wore a black hooded sweatshirt, walked "dazed and confused" around the vehicle. Clerk's Papers (CP) at 5. Schorzman also related that the driver commenced walking from the vehicle and attempted to hitchhike. Schorzman did not report that she saw the driver driving or seated inside the car or that she witnessed the accident.

Trooper Troy Corkins journeyed to milepost 257 and observed a car in the highway median. The car had spun but did not roll. Trooper Corkins, through his patrol car's computer, researched the damaged car's license plate number and discovered that Nathan Mitchell owned the car. Corkins also learned that the State of Washington revoked Mitchell's driver's license. Corkins traveled farther west to locate the driver.

One mile west on I-90 Trooper Troy Corkins espied a white man in a black hooded sweatshirt that matched Nathan Mitchell's driver's license photo. Corkins accosted the man and inquired about his activity. Nathan Mitchell replied that he rode as a passenger in a car driven by his friend, Sean Martin, who walked east on I-90 after the accident. Mitchell described Martin to Trooper Corkins. Corkins asked about the location of the key to the car, and Mitchell replied that he possessed the key.

Trooper Troy Corkins arrested Nathan Mitchell for driving with his license revoked in the first degree. Corkins searched Mitchell, removed items from Mitchell's pockets, and placed the confiscated objects in a plastic bag. Corkins found Mitchell's identification and the car key in Mitchell's pockets, confirmed his identity, handcuffed

2

him, and deposited him in the back seat of the patrol car. Trooper Corkins secured

Mitchell in the back seat with a seatbelt and activated the backseat video camera to

record Mitchell's movements during the ride.

As Trooper Troy Corkins and Nathan Mitchell drove back to the abandoned

vehicle, Mitchell moved constantly in the patrol car's back seat. At the site of the

damaged car lying in the median, Trooper Corkins spoke with another responding state

trooper. When Corkins returned to his patrol car, Mitchell asked Corkins to retrieve

eyeglasses that had fallen to the floor of the car. Corkins obliged and did not notice

anything else on the floor. During the drive to the Spokane County jail, Corkins

occasionally ordered Mitchell to sit up. Mitchell, in turn, complained repeatedly of tight

handcuffs.

Upon arriving at the jail and opening the patrol car rear door, Trooper Troy

Corkins discovered white crystal powder and marijuana scattered across the back seat and

on the floorboard and crushed into a door armrest. Two syringes protruded from under

the partition dividing the front seat from the rear of the car. Corkins also saw a hat on the

back seat, which hat he presumed he missed in his initial search of Mitchell. He searched

the hat and found nothing in it. A test of the white powder confirmed its chemistry as

methamphetamine.

## PROCEDURE

The State of Washington charged Nathan Mitchell with one count of possession of

3

a controlled substance. The State separately charged Mitchell with driving with a license

revoked in district court. In superior court, Mitchell filed a motion to suppress evidence

and to dismiss the controlled substance charge. He argued that (1) Trooper Corkins

lacked probable cause to arrest him for driving with a license suspended, and (2) the State

could not establish a prima facie case of possession of a controlled substance.

The superior court denied Nathan Mitchell's motion to suppress. The trial court

found:

> 1. On April 13, 2014, Trooper T. M. Corkins of the Washington State Patrol [WSP], while on duty on routine patrol, received a radio dispatched report of a single vehicle roll over on westbound I-90 at milepost 257. Trooper Mehaffey was also dispatched and was first to arrive at the scene.
> 2. The incident had been reported by a citizen's report which also advised that the driver of the vehicle was walking around the vehicle and appeared dazed and confused. He was described as wearing a black hooded sweatshirt and was hitchhiking away from the scene.
> 3. WSP radio provided information on the registered owner, who had a drivers' license which was revoked in the first degree. A photograph was electronically obtained by Trooper Corkins. The trooper also determined that the defendant had prior similar offenses.
> 4. Trooper Mehaffey reported that the vehicle had not rolled over but had 'spun out', remaining upright.
> 5. Trooper Corkins located the defendant approximately one mile west of where the vehicle was left, and identified him by his black hooded sweatshirt and the DOL photograph the trooper had viewed. His appearance was consistent with the description given by the witness.
> 6. The defendant told Trooper Corkins that the driver of his vehicle was a male black named Sean Martin who had left the vehicle in the other direction from that which the defendant was going.
> 7. When asked where the keys to the vehicle were, the defendant said he had them.

8. The defendant was arrested for Driving While Revoked in the First Degree.

CP at 50-51.

The trial court concluded:

1. Based on the totality of all the circumstances known to the trooper at the time of the arrest, there was probable cause to arrest him for the traffic offense of Driving While Revoked.
2. Even excluding the statement from the defendant that the car keys were in his possession, there was sufficient facts known to the trooper to arrest the defendant for the traffic offense.
3. The fact that the citizen complainant had characterized the accident as a rollover when it was later determined the vehicle had not, in fact, rolled over, there was sufficient indicia of reliability for the trooper to rely upon the description of the vehicle's driver to support probable cause.

CP at 51-52. In a later hearing, Nathan Mitchell informed the superior court that the district court, which ultimately dismissed for insufficient evidence the charge of first degree driving with license revoked, found Mitchell's arrest valid.

On the morning of the first day of trial, Nathan Mitchell and the State of Washington argued their respective motions in limine. The State moved to exclude references to, and testimony of, Mitchell's assertions to Trooper Corkins that he did not drive the car. The State argued that the statements constituted irrelevant hearsay. The State proposed to show the jury the patrol car backseat camera video without its sound since Mitchell uttered some of these statements en route to the jail. Mitchell opposed the State's motion in limine and requested, under the best evidence rule and the Sixth Amendment, that the jury view and hear the entire video. Mitchell argued that he held a

right to play the entire video to the jury in order to rebut the State's theory that he fidgeted in the backseat of the trooper's vehicle for the purpose of hiding drugs. He informed the court that he planned to testify and his testimony obviated the State's hearsay objection.

The trial court granted the State's motion to broadcast the backseat video to the jury without sound, but also ruled that Nathan Mitchell could play audio from the video, so long as the selected audio did not include statements about who drove the car. The court did not want Mitchell to adjust the volume while the State played the recording for the jury, and thus the court asked that Mitchell edit the video. Mitchell doubted that he could edit the video before trial that afternoon, but the State volunteered to assist in the editing. The trial court granted Mitchell's motion to exclude witnesses from the courtroom while other witnesses testified and to prevent witnesses from discussing the case with one another.

During trial, an evidence custodian, a chemical analyst, and Trooper Troy Corkins testified for the State of Washington. After Corkins' testimony, Mitchell asked the court to reconsider its decision to allow the State to play the backseat video without sound. Mitchell argued that the State "opened the door" to the issue of driver identity by eliciting testimony from Trooper Corkins regarding his determination that Mitchell had been driving. Verbatim Report of Proceedings (VRP) at 123. The trial court denied the motion for reconsideration. The court reasoned that allowing Mitchell to rebut Corkins'

6

testimony would lead the jury to question the legality of Mitchell's arrest, rather than focusing on whether he possessed methamphetamine. The State played the backseat video for the jury, without audio. The record does not show that Mitchell played a version of the video with the audio portions that the trial court ruled admissible.

During trial, Nathan Mitchell testified that, after his arrest, Trooper Troy Corkins thoroughly searched everywhere on his person and in his clothes, except a hat he wore. He declared that handcuffs and a seat belt confined him the entire time he rode in the back of the patrol car and that the confinement caused him discomfort due to an old shoulder injury. Mitchell insisted he could not reach into his pockets or reach the car's floorboard, while restrained. He denied leaving methamphetamine or syringes in Trooper Corkins' vehicle.

The jury found Nathan Mitchell guilty of possession of a controlled substance. During sentencing, the trial court found that a chemical dependency contributed to Mitchell's offense and sentenced him to twenty months of confinement and twelve months of community custody. The trial court also ordered Mitchell to refrain from using or possessing marijuana or products containing tetrahydrocannabinol (THC), to undergo a substance abuse evaluation, and to fully comply with all treatment recommended by the Department of Corrections. The court decreed that Mitchell could "not consume controlled substances except pursuant to lawfully issued prescriptions," while on community custody. CP at 110.

At sentencing, the trial court also imposed $800 in mandatory legal financial obligations: a $500 victim assessment fee, a $200 criminal filing fee, and a $100 deoxyribonucleic acid (DNA) collection fee. The judgment and sentence read that Nathan Mitchell need not submit to DNA testing "if it is established that the Washington State Patrol crime laboratory already has a sample from the defendant for a qualifying offense." CP at 113. During sentencing, the trial court engaged in a colloquy with Mitchell regarding whether he could afford to pay legal financial obligations:

> THE COURT: As far as your legal financial obligations are concerned, how much per month can you pay and when can you begin payment on those?
> THE DEFENDANT: I don't know. I have a hard time being able to find a job with all the felonies I have on my conviction record. $5.
> THE COURT: Do you suppose if I give you some time to begin those you can do $10 a month?
> THE DEFENDANT: I can try.
> THE COURT: Why don't we start those out—start them October 15 of 2015. That gives you more than a year to start making payments on those. Interest does accrue on the unpaid balance, so if you are able to make more payments on it, you should do that. Also, if you're not able to make payments, make sure you let the Court know.

VRP at 241. The court ordered Mitchell to begin making $10 monthly payments on October 15, 2015. During the sentencing hearing, Mitchell withheld any objection to the imposition of legal financial obligations.

LAW AND ANALYSIS

*Probable Cause for Arrest*

8

Nathan Mitchell first contends that the trial court erred in ruling that Trooper Troy Corkins possessed probable cause to arrest him for driving with license revoked in the first degree because no one observed Mitchell driving the abandoned car or sitting in the driver's seat. He additionally argues that the district court's dismissal of the charged driving offense should prevent the State from using evidence obtained as a result of his arrest for that offense in the superior court prosecution. The State argues that Trooper Corkins' knowledge that Mitchell was the registered owner of the vehicle, that Mitchell's license was revoked, and that Mitchell matched Lisa Schorzman's description of the "driver" of the vehicle, together with Mitchell's possession of the key to the car created probable cause for Mitchell's arrest. We hold that Trooper Corkins had probable cause to arrest Mitchell for driving with license revoked in the first degree.

Nathan Mitchell does not assign error to any of the trial court's findings of fact entered in response to his motion to suppress. When findings entered after a suppression hearing are unchallenged, they are verities on appeal. *State v. O'Neill*, 148 Wn.2d 564, 571, 62 P.3d 489 (2003).

Under Washington statute:

> A police officer may arrest a person without a warrant for committing a misdemeanor or gross misdemeanor only when the offense is committed in the presence of an officer, except as provided in subsections (1) through (11) of this section.
>
> . . . .

9

(3) Any police officer having probable cause to believe that a person has committed or is committing a violation of any of the following traffic laws shall have the authority to arrest the person:

. . . .

(f) RCW 46.20.342, relating to driving a motor vehicle while operator's license is suspended or revoked.

RCW 10.31.100. Thus, a law enforcement officer need not see a defendant drive a car in order to arrest him or her for driving while license suspended or revoked.

In turn:

(1) It is unlawful for any person to drive a motor vehicle in this state while that person is in a suspended or revoked status or when his or her privilege to drive is suspended or revoked in this or any other state.

. . . .

(a) A person found to be a habitual offender under chapter 46.65 RCW, who violates this section while an order of revocation issued under chapter 46.65 RCW prohibiting such operation is in effect, is guilty of driving while license suspended or revoked in the first degree, a gross misdemeanor.

RCW 46.20.342. Thus, a police officer in Washington may lawfully arrest an individual for driving while license revoked in the first degree, even if the offense is not committed in his presence, so long as probable cause supports the arrest.

Probable cause exists when the arresting officer is aware of facts and circumstances, based on reasonably trustworthy information, sufficient to cause a reasonable officer to believe a crime has been committed. *State v. Potter*, 156 Wn.2d 835, 840, 132 P.3d 1089 (2006); *State v. Terrovona*, 105 Wn.2d 632, 643, 716 P.2d 295 (1986). At the time of arrest, the arresting officer need not have evidence to prove each

10

element of the crime beyond a reasonable doubt. *State v. Gaddy*, 152 Wn.2d 64, 70, 93 P.3d 872 (2004). The officer is required only to have knowledge of facts sufficient to cause a reasonable person to believe that an offense had been committed. *State v. Knighten*, 109 Wn.2d 896, 903, 748 P.2d 1118 (1988). To determine whether probable cause exists, this court will consider the totality of the facts and circumstances within the officer's knowledge at the time of the arrest. *State v. Graham*, 130 Wn.2d 711, 724, 927 P.2d 227 (1996).

Probable cause is not negated merely because the officer may imagine an innocent explanation for observed or reported activities. *State v. Fore*, 56 Wn. App. 339, 344, 783 P.2d 626 (1989). Circumstantial evidence is sufficient to establish probable cause. *Adams County v. One 1978 Blue Ford Bronco*, 74 Wn. App. 702, 705, 875 P.2d 690 (1994); *City of Lynnwood v. $128 Cash*, 61 Wn. App. 505, 514, 810 P.2d 1377 (1991).

Compelling circumstantial evidence established probable cause for Trooper Troy Corkins to arrest Nathan Mitchell for driving while license revoked. Lisa Schorzman, a citizen informant, saw a car stranded in the median and reported seeing a dazed man fitting Mitchell's description walking near the car. Evidence of past reliability is not required from a citizen informant, because a citizen who is an eyewitness lacks the opportunity to establish a record of previous reliability. *State v. Riley*, 34 Wn. App. 529, 533, 663 P.2d 145 (1983). When a citizen informant's identity is revealed, the indicia of reliability requirement is satisfied if the informant provides a detailed description of the

11

underlying circumstances observed. *State v. Berlin*, 46 Wn. App. 587, 590, 731 P.2d 548 (1987); *State v. Northness*, 20 Wn. App. 551, 557, 582 P.2d 546 (1978).

Trooper Troy Corkins gained additional knowledge from his own research. Corkins, through his car's computer, identified Nathan Mitchell as the owner of the car from the car's license plate. Corkins discovered that the State revoked Mitchell's driving privileges. Trooper Corkins drove in the direction that Lisa Schorzman reported seeing the car's driver walk and found him one mile to the west. Mitchell's appearance fit his driver's license photo on file with the Department of Licensing. Mitchell admitted he owned the vehicle. He possessed the key to the car. Although Mitchell claimed that another person drove his car, neither Trooper Corkins nor Schorzman saw a second person. Under these circumstances, a reasonable officer could conclude that Nathan Mitchell committed the offense of driving while revoked in the first degree.

### Constitutionality of DNA Collection Fee

RCW 43.43.754 demands a biological sample, for purposes of DNA identification analysis, from an adult convicted of a felony. In turn, RCW 43.43.7541 imposes a $100 mandatory fee on the adult convicted of a felony to defray the cost of the collection of the sample. The latter statute reads, in relevant part:

> Every sentence imposed for a crime specified in RCW 43.43.754 must include a fee of one hundred dollars. The fee is a court-ordered legal financial obligation as defined in RCW 9.94A.030 and other applicable law. For a sentence imposed under chapter 9.94A RCW, the fee is payable by the offender after payment of all other legal financial obligations

12

included in the sentence has been completed. For all other sentences, the
fee is payable by the offender in the same manner as other assessments
imposed. . . .

RCW 43.43.7541.

Nathan Mitchell contends that the mandatory $100 DNA collection fee imposed
under RCW 43.43.7541 violates principles of substantive due process and equal
protection as applied to him and other similarly situated indigent defendants. Although
Mitchell recognizes that the fee implicates neither a fundamental right nor discriminates
against a protected class of individuals, he argues that the fee is not rationally related to
the State's interest in funding the collection, testing, and retention of an offender's DNA.
He also maintains that RCW 43.43.7541 irrationally requires previously convicted felony
defendants to pay multiple DNA collection fees, while other defendants, presumably
those without multiple felony convictions, need only pay the fee once. The State
responds that the statute does not violate substantive due process, and that Mitchell lacks
standing to make an equal protection challenge.

Nathan Mitchell did not challenge the constitutionality of the DNA collection fee
before the trial court. We, therefore, decline to address the argument under the
circumstances of this appeal.

A party may not generally raise a new argument on appeal that the party did not
present to the trial court. *In re Det. of Ambers*, 160 Wn.2d 543, 557 n.6, 158 P.3d 1144
(2007). A party must inform the court of the rules of law it wishes the court to apply and

13

afford the trial court an opportunity to correct any error. *Smith v. Shannon*, 100 Wn.2d 26, 37, 666 P.2d 351 (1983).

RAP 2.5 formalizes a fundamental principle of appellate review. The first sentence of the rule reads:

> **(a) Errors Raised for First Time on Review.** The appellate court may refuse to review any claim of error which was not raised in the trial court.

No procedural principle is more familiar than that a constitutional right, or a right of any other sort, may be forfeited in criminal cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it. *United States v. Olano*, 507 U.S. 725, 731, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993); *Yakus v. United States*, 321 U.S. 414, 444, 64 S. Ct. 660, 88 L. Ed. 834 (1944).

Good sense lies behind the requirement that arguments be first asserted at trial. The prerequisite affords the trial court an opportunity to rule correctly on a matter before it can be presented on appeal. *State v. Strine*, 176 Wn.2d 742, 749, 293 P.3d 1177 (2013). There is great potential for abuse when a party does not raise an issue below because a party so situated could simply lie back, not allowing the trial court to avoid the potential prejudice, gamble on the verdict, and then seek a new trial on appeal. *State v. Weber*, 159 Wn.2d 252, 271-72, 149 P.3d 646 (2006); *State v. Emery*, 174 Wn.2d 741, 762, 278 P.3d 653 (2012). The theory of preservation by timely objection also addresses several other concerns. The rule serves the goal of judicial economy by enabling trial

14

courts to correct mistakes and thereby obviate the needless expense of appellate review and further trials, facilitates appellate review by ensuring that a complete record of the issues will be available, and prevents adversarial unfairness by ensuring that the prevailing party is not deprived of victory by claimed errors that he had no opportunity to address. *State v. Strine*, 176 Wn.2d at 749-50; *State v. Scott*, 110 Wn.2d 682, 685-88, 757 P.2d 492 (1988).

Countervailing policies support allowing an argument to be raised for the first time on appeal. For this reason, RAP 2.5(a) contains a number of exceptions. RAP 2.5(a) allows an appellant to raise for the first time "manifest error affecting a constitutional right," an exception on which a criminal appellant commonly relies. Constitutional errors are treated specially under RAP 2.5(a) because they often result in serious injustice to the accused and may adversely affect public perceptions of the fairness and integrity of judicial proceedings. *State v. Scott*, 110 Wn.2d at 686-87. Prohibiting all constitutional errors from being raised for the first time on appeal would result in unjust imprisonment. 2A KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE RAP 2.5 author's cmt. 6, at 218 (8th ed. 2014). On the other hand, "permitting *every possible* constitutional error to be raised for the first time on appeal undermines the trial process, generates unnecessary appeals, creates undesirable retrials and is wasteful of the limited resources of prosecutors, public defenders and courts." *State v. Lynn*, 67 Wn. App. 339, 344, 835 P.2d 251 (1992).

15

Washington courts and even decisions internally have announced differing formulations for "manifest error." First, a manifest error is one "truly of constitutional magnitude." *State v. Scott*, 110 Wn.2d at 688. Second, perhaps perverting the term "manifest," some decisions emphasize prejudice, not obviousness. The defendant must identify a constitutional error and show how, in the context of the trial, the alleged error actually affected the defendant's rights. It is this showing of actual prejudice that makes the error "manifest," allowing appellate review. *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2010); *Scott*, 110 Wn.2d at 688; *Lynn*, 67 Wn. App. at 346. A third and important formulation for purposes of this appeal is the facts necessary to adjudicate the claimed error must be in the record on appeal. *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995); *State v. Riley*, 121 Wn.2d 22, 31, 846 P.2d 1365 (1993).

In *State v. Riley*, Joseph Riley argued that the admission of incriminating statements violated his Fourth Amendment rights because the statements were the fruit of an illegal search of his home. The state high court refused to entertain the argument because the record lacked clarity as to whether Riley uttered the statements before being told the investigating officer possessed a search warrant.

We consider whether the record on appeal is sufficient to review Nathan Mitchell's constitutional arguments. Mitchell's contentions assume his poverty. Nevertheless, the record contains no information, other than Mitchell's statutory indigence for purposes of hiring an attorney, that he lacks funds to pay a $100 fee. The

16

cost of a criminal charge's defense exponentially exceeds $100. Therefore, one may be able to afford payment of $100, but not afford defense counsel. Mitchell has presented no evidence of his assets, income, or debts. Thus, the record lacks the details important in resolving Mitchell's due process and equal protection arguments.

### Second DNA Collection Fee

Nathan Mitchell next contends that the trial court abused its discretion by ordering him to submit to collection of a DNA sample under RCW 43.43.754, because the State of Washington already collected a biological sample and a fee from him. RCW 43.43.754(2) provides:

> If the Washington state patrol crime laboratory already has a DNA sample from an individual for a qualifying offense, a subsequent submission is not required to be submitted.

At trial, Mitchell did not object to giving a DNA sample nor provide proof that the State already collected his DNA after one of his eleven previous felony convictions. We refuse to entertain this assignment of error because Mitchell did not object before the trial court and the assignment does not raise a constitutional issue.

As previously written, a party may not generally raise a new argument on appeal that the party did not present to the trial court. RAP 2.5(a); *In re Det. of Ambers*, 160 Wn.2d at 557 n.6 (2007). A party must inform the trial court of the rules of law it wishes the court to apply and afford the trial court an opportunity to correct any error. *Smith v. Shannon*, 100 Wn.2d at 37 (1983). We also note that the trial court order reads that

17

Mitchell need not submit to DNA testing "if it is established that the Washington State Patrol crime laboratory already has a sample from the defendant for a qualifying offense." CP at 113.

## Legal Financial Obligations

Nathan Mitchell contends that the trial court erred in imposing legal financial obligations without inquiring into his ability to pay. Mitchell did not object to the imposition of the financial obligations at sentencing. Nevertheless, Mitchell asks this court to exercise its discretion, pursuant to *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015), and remand for a hearing on his ability to pay the obligations. Mitchell's reliance on *Blazina* is misplaced, however, since Mitchell's trial court only imposed mandatory legal financial obligations.

The trial court imposed a $500 victim assessment fee, a $200 criminal filing fee, and a $100 DNA collection fee. RCW 7.68.035, RCW 36.18.020(2)(h), and RCW 43.43.7541 respectively mandate the fees regardless of the defendant's ability to pay. Trial courts must impose such fees regardless of a defendant's indigency. *State v. Lundy*, 176 Wn. App. 96, 102, 308 P.3d 755 (2013). *Blazina* addressed only discretionary legal financial obligations.

## Prohibition of Marijuana Possession

Nathan Mitchell contends that the trial court erred in ordering a condition to community custody that prohibits him from using or possessing marijuana or products

18

containing THC. He argues that the prohibition is not crime related and thus exceeds the sentencing court's statutory authority. The State responds that the trial court did not abuse its discretion in imposing the condition because it specifically found that a chemical dependency contributed to Mitchell's offense. Since Mitchell does not deny a chemical dependency, we agree with the State.

A trial court may only impose sentences that a statute authorizes. *State v. Albright*, 144 Wn. App. 566, 568, 183 P.3d 1094 (2008). A trial court must order an offender, as a part of any term of community custody, to "[r]efrain from possessing or consuming controlled substances except pursuant to lawfully issued prescriptions," unless the trial court decides to waive the prohibition. RCW 9.94A.703(2)(c). At the time of Mitchell's prosecution, former RCW 9.94A.505(8) (2014) read:

> As a part of any sentence, the court may impose and enforce crime-related prohibitions and affirmative conditions as provided in this chapter.

The statute defined "crime-related prohibition" as:

> an order of a court prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted, and shall not be construed to mean orders directing an offender affirmatively participate in rehabilitative programs or to otherwise perform affirmative conduct. However, affirmative acts necessary to monitor compliance with the order of a court may be required by the department.

Former RCW 9.94A.030(10) (2014).

The trial court found that Nathan Mitchell's chemical dependency contributed to his possession of methamphetamine. Mitchell argues that the possession of marijuana is

19

not related to the possession of methamphetamine. Nevertheless, the relevant statutes here did not distinguish between the controlled substance, which is the subject of the conviction, with other substances for purposes of the community custody condition. The statutes afforded trial courts considerable discretion in fashioning community custody conditions, so long as the conditions did not require affirmative acts of rehabilitation on the part of the offender. The trial court's order here imposes no such requirement, and therefore the community custody condition prohibiting Mitchell from possessing or using marijuana or products containing THC is valid.

Statement of Additional Grounds for Review

Nathan Mitchell raises several issues in his statement of additional grounds for review (SAG). A criminal defendant may submit a pro se statement of additional grounds for review "to identify and discuss those matters related to the decision under review *that* the defendant believes have not been adequately addressed by the brief filed by the defendant's counsel." RAP 10.10(a). The rule additionally declares in part:

> . . . Reference to the record and citation to authorities are not necessary or required, but the appellate court will not consider a defendant's statement of additional grounds for review if it does not inform the court of the nature and occurrence of alleged errors. Except as required in cases in which counsel files a motion to withdraw as set forth in rule 18.3(a)(2), the appellate court is not obligated to search the record in support of claims made in a defendant's statement of additional grounds for review.

RAP 10.10(c); *see also State v. Alvarado*, 164 Wn.2d 556, 569, 192 P.3d 345 (2008).

20

Nathan Mitchell renews his challenge to the trial court's evidentiary ruling, which allowed the State to play the backseat video of his ride in Trooper Troy Corkins' patrol car. He argues that, once he testified, the trial court should have reevaluated the State's hearsay objection to the audio portion of the video. His counsel below argued the best evidence rule required the court to play the video with audio. Mitchell's counsel repeatedly argued that playing the backseat video without sound deprived Mitchell of the ability to defend against the State's theory of the case: that Mitchell moved around and fidgeted in the back seat in order to hide drugs he had concealed on his person.

This court reviews a trial court's decision to admit or exclude evidence for abuse of discretion. *State v. Kinard*, 109 Wn. App. 428, 435, 36 P.3d 573 (2001). In general, the best evidence rule dictates: "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required," unless other rules or statutes provide otherwise. ER 1002. The original is not required, and other evidence of a recording is admissible, if the recording "is not closely related to a controlling issue." ER 1004(d). A trial court's decision to allow other evidence of the contents of a document is reviewed for abuse of discretion. *State v. Detrick*, 55 Wn. App. 501, 503, 778 P.2d 529 (1989).

Nathan Mitchell's challenge does not correspond to the best evidence rule because he does not argue that the State failed to produce the original video. Rather, he argues that the video must be shown with sound in order for it to truly be the "best evidence" of

21

the video. No Washington case has applied the best evidence rule to compel noise with moving pictures.

Nathan Mitchell's challenge fits closer with ER 106, the rule of completeness. ER 106 prescribes:

> When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the party at that time to introduce any other part, or any other writing or recorded statement, which ought in fairness to be considered contemporaneously with it.

Mitchell did not assert this rule below. Therefore, we will not address the applicability of ER 106. RAP 2.5(a).

Next, Nathan Mitchell contends that the trial court erred in imposing substance abuse treatment as a condition of his community custody term. He believes the trial court's following statement supports his contention:

> I also think that treatment is a good thing. If we can get you cured of any problems, then you're not going to be coming through here and spending everyone's resources to do that. It looks like you've tried a couple DOSA sentences in the past, you have probably been through treatment other times, and nothing has taken hold yet. So we're kind of running out of options here, sir.

VRP at 239.

A trial court may only impose sentences that statutes authorize. *State v. Albright*, 144 Wn. App. at 568 (2008). RCW 9.94A.607(1) provides:

> Where the court finds that the offender has a chemical dependency that has contributed to his or her offense, the court may, as a condition of the sentence and subject to available resources, order the offender to

22

participate in rehabilitative programs or otherwise to perform affirmative conduct reasonably related to the circumstances of the crime for which the offender has been convicted and reasonably necessary or beneficial to the offender and the community in rehabilitating the offender.

As mentioned above, the trial court found that chemical dependency contributed to Mitchell's offense. Thus, its decision to impose chemical dependency treatment as a condition of Mitchell's community custody was statutorily authorized.

Nathan Mitchell next contends that the trial court should have afforded him an opportunity to interview the witnesses that the trial court excluded from the courtroom during the testimony of other witnesses. We assume Mitchell refers to the trial court's order in limine granted in response to Mitchell's motion. Mitchell may not understand what "exclusion" means in this setting. The trial court did not bar Mitchell from interviewing witnesses in advance of their testimony. Mitchell's counsel remained free to interview the three other witnesses who testified besides him.

Nathan Mitchell contends he received ineffective assistance of counsel because his attorney did not call Lisa Schorzman, who reported seeing Mitchell's car in the median of I-90, as a witness. A claim of ineffective assistance of counsel requires proving that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defendant. *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987). Deficient performance occurs when counsel's performance falls below an objective standard of reasonableness. *State v. Stenson*, 132 Wn.2d 668, 705, 940 P.2d 1239 (1997). This court

23

presumes that counsel was effective. *Strickland v. Washington*, 466 U.S. 668, 689-90, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. McFarland*, 127 Wn.2d at 335 (1995). To rebut the strong presumption that counsel's performance was effective, the defendant bears the burden of establishing the absence of any conceivable legitimate tactic explaining counsel's performance. *State v. Hamilton*, 179 Wn. App. 870, 879-80, 320 P.3d 142 (2014). Generally, the decision to call a witness will not support a claim of ineffective assistance of counsel. *Thomas*, 109 Wn.2d at 230. Such a decision is one of strategy.

Nathan Mitchell cannot meet the first prong of his ineffective assistance claim. Mitchell's counsel likely did not summon Lisa Schorzman as a witness because her testimony was irrelevant to the charge of possession of methamphetamine. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. The trial below did not concern Mitchell's driving with a revoked driver's license. Schorzman lacked percipient knowledge of whether Mitchell possessed methamphetamine, the charge comprising the trial. Accordingly, Mitchell's counsel's performance was not deficient.

Nathan Mitchell raises one contention that this court cannot address because the argument depends on matters outside the record. Mitchell complains that the State adjudicated his two charges, driving with license revoked and possession of

24

methamphetamine, separately. Mitchell argues that by prosecuting the two charges independently, the court prejudiced his ability to prepare a defense. He places much emphasis on the fact that the district court dismissed his driving offense for insufficient evidence, but that the superior court was nevertheless able to use evidence obtained after his arrest to prosecute him for possession of methamphetamine.

CrR 4.3(a) provides:

> ... Two or more offenses may be joined in one charging document, with each offense stated in a separate count, when the offenses, whether felonies or misdemeanors or both:
> (1) Are of the same or similar character, even if not part of a single scheme or plan; or
> (2) Are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.

Joinder is proper as a matter of law if these requirements are met and the defendant is not prejudiced. *State v. Nation*, 110 Wn. App. 651, 658-59, 41 P.3d 1204 (2002).

The record does not disclose whether Nathan Mitchell requested or was denied joinder of his two offenses. RAP 2.5(a) provides, in relevant part: "The appellate court may refuse to review any claim of error which was not raised in the trial court. However, a party may raise the following claimed errors for the first time in the appellate court . . . (3) manifest error affecting a constitutional right." "If the facts necessary to adjudicate the claimed error are not in the record on appeal, no actual prejudice is shown and the error is not manifest." *State v. McFarland*, 127 Wn.2d at 333. This issue is better raised as a personal restraint petition. RAP 16.4(c)(3).

25

Finally, Nathan Mitchell raises two contentions that are too vague for this court to address: (1) his trial counsel should have objected to one of Trooper Troy Corkins' responses on direct examination, and (2) his defense counsel did not adequately prepare for trial. Although a criminal appellant need not provide citations to the record and legal authority for this court to address an issue raised in his statement of additional grounds, the appellant must provide some information enabling this court to understand the nature of the complained error. Mitchell does not state why Trooper Corkins' response necessitated an objection, or why he believed his counsel had not sufficiently prepared for trial. This court will not address these vague assertions of error.

## CONCLUSION

We affirm Nathan Mitchell's conviction for possession of methamphetamine and his sentence on the conviction.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Korsmo, J.

_____
Lawrence-Berrey, J.