[No. 54241-4.   En Banc.   June 9, 1988.]

THE STATE OF WASHINGTON, *Respondent,* v. KEITH LYLE SCOTT, ET AL, *Defendants,* FERDINAND BROWN, *Petitioner.*

*Neil M. Fox* of *Washington Appellate Defender Association,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Celeste Stokes, Deputy,* for respondent.

DURHAM, J.—Ferdinand Brown was arrested on March 26, 1985, along with two other individuals, while riding in the back of an automobile which had been seen near the site of a burglary. On the seat next to Brown, police found several pieces of electronics equipment which were identified as missing from the burglarized apartment.

At Brown's trial, the State argued that while Brown may not have personally removed the stolen items from the apartment, he was an accomplice to the burglary. Brown offered, and the trial court accepted, an instruction on accomplice liability that described "knowledge" as an element of the offense but did not define the term.[1] The trial court did not supplement this instruction with one defining "knowledge".

Brown made no objection at trial to the judge's failure to define "knowledge" and raised the issue for the first time

---

[1] Instruction 7 read as follows: "A person who is an accomplice in the commission of a burglary is guilty of that crime whether present at the scene or not.

"A person is accomplice in the commission of a burglary, if, with knowledge that it will promote or facilitate the commission of the crime, he or she either:

"(1) solicits, commands, encourages, or requests another person to commit the crime; or

"(2) aids or agrees to aid another person in planning or committing the burglary.

"The word 'aid' means all assistance whether given by words, acts, encouragement or support. A person who is present at the scene and is ready to assist in the burglary by his or her presence is aiding in the commission of the crime."

on appeal. Brown argued in the Court of Appeals, and continues to argue here, that the trial court's failure to submit to the jury a definition of "knowledge" was constitutional error and thus may be challenged for the first time on appeal under the authority of RAP 2.5(a)(3). The Court of Appeals decided that Brown's challenge need not be entertained because the asserted error, even if constitutional, was not "obvious and manifest". *State v. Scott,* 48 Wn. App. 561, 567–69, 739 P.2d 742 (1987).[2] We granted Brown's petition for review.

## I

This case points out the need for clarification of certain matters of trial and appellate procedure. Primary among these are the scope and basis of our holding in *State v. Allen,* 101 Wn.2d 355, 678 P.2d 798 (1984), that when the trial court instructs the jury on the elements of a crime for which the mens rea is "intent", that term must be defined in the manner set forth in RCW 9A.08.010(1)(a). Not decided in *Allen,* and at issue here, is the applicability of this rule to the mental state of "knowledge" described in RCW 9A.08.010(1)(b). Also unstated in *Allen* is the precise legal basis for the decision. Brown, and at least one panel of the Court of Appeals, have interpreted *Allen* as constitutionally based. *See State v. Tyler,* 47 Wn. App. 648, 652–53, 736 P.2d 1090 (1987). Other courts, including the court below, have been reluctant to view *Allen* in this way. *See State v. Scott,* at 567–68; *State v. Thompson,* 47 Wn. App. 1, 9, 733 P.2d 584, *review denied,* 108 Wn.2d 1014 (1987); *State v. Boot,* 40 Wn. App. 215, 218, 697 P.2d 1034 (1985).

The scope and basis of the *Allen* holding is determinative of Brown's right to present his appeal. Having failed to object at trial to the absence of an instruction defining "knowledge", Brown may not raise the objection for the first time on appeal unless it relates to "manifest error affecting a constitutional right." RAP 2.5(a)(3). Thus, only

---

[2]Brown has not sought review of the other issues he raised in the Court of Appeals.

if the rule of *Allen* is a constitutional rule, and only if the rule extends to "knowledge", can Brown's appeal be heard.

Also in need of clarification is the proper construction to be given the "manifest error" standard stated in RAP 2.5(a)(3). The court below, apparently concerned that "the rule is often construed too broadly", asserted its discretion to refuse review of constitutional errors when "obvious and manifest injustice" has not occurred. *Scott,* at 568; *see also State v. Stubsjoen,* 48 Wn. App. 139, 147–50, 738 P.2d 306, *review denied,* 108 Wn.2d 1033 (1987). This approach reflects a much narrower construction of RAP 2.5(a)(3) than we previously have adopted. In several cases, we have held that instructional errors which are "of a constitutional magnitude" may be raised for the first time on appeal, without considering the degree to which the asserted errors were "manifest". *State v. McCullum,* 98 Wn.2d 484, 487–88, 656 P.2d 1064 (1983); *see State v. Peterson,* 73 Wn.2d 303, 306, 438 P.2d 183 (1968).

We will attempt in this opinion to explain the "manifest error" standard of RAP 2.5(a)(3) and to clarify our holding in *Allen.* With respect to the case at hand, we affirm the judgment of the Court of Appeals.

## II

RAP 2.5(a) states the general rule for appellate disposition of issues not raised in the trial court: appellate courts will not entertain them. *See, e.g., State v. Coe,* 109 Wn.2d 832, 842, 750 P.2d 208 (1988); *State v. Peterson, supra* at 306. The rule reflects a policy of encouraging the efficient use of judicial resources. The appellate courts will not sanction a party's failure to point out at trial an error which the trial court, if given the opportunity, might have been able to correct to avoid an appeal and a consequent new trial. *See Seattle v. Harclaon,* 56 Wn.2d 596, 597, 354 P.2d 928 (1960).

With respect to claimed errors in jury instructions in criminal cases, this general rule has a specific applicability. CrR 6.15(c) requires that timely and well stated objections

be made to instructions given or refused "in order that the trial court may have the opportunity to correct any error." *Seattle v. Rainwater,* 86 Wn.2d 567, 571, 546 P.2d 450 (1976); *cf. Henderson v. Kibbe,* 431 U.S. 145, 154, 52 L. Ed. 2d 203, 97 S. Ct. 1730 (1977) (describing analogous federal rule). Citing this rule or the principles it embodies, this court on many occasions has refused to review asserted instructional errors to which no meaningful exceptions were taken at trial. *See, e.g., Rainwater,* at 570–72; *State v. Scherer,* 77 Wn.2d 345, 352, 462 P.2d 549 (1969); *State v. Louie,* 68 Wn.2d 304, 311–12, 413 P.2d 7 (1966), *cert. denied,* 386 U.S. 1042 (1967).

Brown's instructional challenge squarely confronts these procedural barriers. He did not object at trial to the accomplice liability instruction that was given; indeed, the trial court accepted a version of the instruction that Brown had proposed. Nor did Brown request an instruction defining "knowledge", the omission of which he now asserts to be error. Thus, Brown comes before this court in much the same position as did the defendant in *State v. Kroll,* 87 Wn.2d 829, 558 P.2d 173 (1976), and our response to Brown's claim should be the same as our response in *Kroll:* "No error can be predicated on the failure of the trial court to give an instruction when no request for such an instruction was ever made." *Kroll,* at 843.

Not surprisingly, therefore, Brown seeks to avoid the consequences of his failure to comply with the well settled procedural requirements by elevating his challenge "into the constitutional realm". *Louie,* at 314. As our cases hold, and RAP 2.5(a)(3) succinctly states, certain instructional errors that are of constitutional magnitude may be challenged for the first time on appeal. Constitutional errors are treated specially because they often result in serious injustice to the accused.[3] *State v. Peterson, supra* at 306 n.5.

---

[3]Indeed, constitutional error is presumed to be prejudicial. *State v. Guloy,* 104 Wn.2d 412, 425, 705 P.2d 1182 (1985), *cert. denied,* 475 U.S. 1020 (1986); *State v. Young,* 48 Wn. App. 406, 417–18, 739 P.2d 1170 (1987).

Such errors also require appellate court attention because they may adversely affect the public's perception of the fairness and integrity of judicial proceedings. *State v. McHenry,* 88 Wn.2d 211, 558 P.2d 188 (1977); *see generally* 3A C. Wright, *Federal Practice* § 856, at 339–41 (2d ed. 1982).[4]

██ The Court of Appeals assumed that Brown's challenge is constitutional, but refused review because it did not believe the asserted error to be "manifest" within the meaning of RAP 2.5(a)(3). Specifically, the court determined that the "failure to define knowledge [could not have] created 'obvious and manifest injustice". *State v. Scott,* 48 Wn. App. 561, 569, 739 P.2d 742 (1987). We take a different approach. First, we do not assume that Brown's challenge is of constitutional magnitude, but conclude that the error Brown asserts is not in fact constitutional error. See *infra.* Second, we would not limit applicability of RAP 2.5(a)(3) according to the degree to which the asserted error appears "manifest".

We agree with the Court of Appeals that the constitutional error exception is not intended to afford criminal defendants a means for obtaining new trials whenever they can "identify a constitutional issue not litigated below." *State v. Valladares,* 31 Wn. App. 63, 76, 639 P.2d 813 (1982), *aff'd in part, rev'd in part,* 99 Wn.2d 663, 664 P.2d 508 (1983). The exception actually is a narrow one, affording review only of "certain constitutional questions". Comment (a), RAP 2.5, 86 Wn.2d 1152 (1976). Moreover, the exception does not help a defendant when the asserted constitutional error is harmless beyond a reasonable doubt. *See Chapman v. California,* 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824, 24 A.L.R.3d 1065 (1967).

---

[4]Reference in this opinion to cases and commentary interpreting Fed. R. Crim. P. 52(b) is not intended to suggest that RAP 2.5(a)(3) is equivalent in all respects to the federal rule, but merely acknowledges our appellate rule's genesis in federal law. *See* Comment (a), RAP 2.5, 86 Wn.2d 1152 (1976). Indeed, because it covers only constitutional errors, RAP 2.5(a)(3) is significantly narrower than Fed. R. Crim. P. 52(b) which covers "[p]lain errors".

We disagree, however, that by deciding that an error is not "manifest", an appellate court can usefully shortcut the review process. Even the threshold determination of "reviewability" requires diligent attention to the record. *Cf. United States v. Young,* 470 U.S. 1, 16, 84 L. Ed. 2d 1, 105 S. Ct. 1038 (1985) ("Especially when addressing plain error, a reviewing court cannot properly evaluate a case except by viewing such a claim against the entire record."). Thus, no appellate effort is saved by cutting off *review* of those cases in which *reversal* is determined to be unnecessary.

The proper way to approach claims of constitutional error asserted for the first time on appeal is as follows. First, the appellate court should satisfy itself that the error is truly of constitutional magnitude—that is what is meant by "manifest".[5] If the asserted error is not a constitutional error, the court may refuse review on that ground. If the claim is constitutional, then the court should examine the effect the error had on the defendant's trial according to the harmless error standard set forth in *Chapman v. California, supra.*

The practicality of this method of analysis is attested to by the long–standing practice of this and other appellate courts. *See, e.g., State v. Cox,* 94 Wn.2d 170, 615 P.2d 465 (1980); *United States v. Lopez,* 575 F.2d 681, 685 (9th Cir. 1978); *United States v. Gunter,* 546 F.2d 861, 865 (10th Cir. 1976), *cert. denied,* 431 U.S. 920 (1977). Also recommending this approach is its forthrightness. By making

---

[5]Examples of "manifest" constitutional errors in jury instructions are: directing a verdict, *State v. Peterson,* 73 Wn.2d 303, 306, 438 P.2d 183 (1968); shifting the burden of proof to the defendant, *State v. McCullum,* 98 Wn.2d 484, 487–88, 656 P.2d 1064 (1983); failing to define the "beyond a reasonable doubt" standard, *State v. McHenry,* 88 Wn.2d 211, 214, 558 P.2d 188 (1977); failing to require a unanimous verdict, *State v. Carothers,* 84 Wn.2d 256, 262, 525 P.2d 731 (1974); and omitting an element of the crime charged, *State v. Johnson,* 100 Wn.2d 607, 623, 674 P.2d 145 (1983), *overruled on other grounds in State v. Bergeron,* 105 Wn.2d 1, 711 P.2d 1000 (1985). Instructional errors that do not fall within the scope of RAP 2.5(a)(3) include failure to instruct on a lesser included offense, *State v. Mak,* 105 Wn.2d 692, 745–49, 718 P.2d 407, *cert. denied,* 479 U.S. 995, 93 L. Ed. 2d 599, 107 S. Ct. 599 (1986); and failure to define individual terms. See *infra.*

express the determinations that a literal refusal to "review" might leave unexplained, we can improve the perceived fairness of our rulings and contribute to the development of important areas of criminal and constitutional law.

## III

Under the approach described above, we first ask if Brown's claim is truly of constitutional magnitude. Brown points to *State v. Allen,* 101 Wn.2d 355, 678 P.2d 798 (1984) and *State v. Davis,* 27 Wn. App. 498, 618 P.2d 1034 (1980). These cases, Brown asserts, constitutionalized the long–recognized rule that "'[t]he court in the trial of a criminal case is required to define technical words and expressions, but not words and expressions which are of ordinary understanding and self–explanatory.'" *State v. Lyskoski,* 47 Wn.2d 102, 111, 287 P.2d 114 (1955) (quoting 1 E. Branson, *Instructions to Juries* § 55, at 169 (3d ed. 1936)).

We recently rejected a similar argument in *State v. Ng,* 110 Wn.2d 32, 44, 750 P.2d 632 (1988). The defendant in *Ng* argued for the first time on appeal that the trial court's failure to define "theft" in an instruction for robbery was error. We explained our refusal to consider the challenge by quoting the following passage from *State v. Pawling,* 23 Wn. App. 226, 597 P.2d 1367, *review denied,* 92 Wn.2d 1035 (1979):

> The constitutional requirement is only that the jury be instructed as to each element of the offense charged. *State v. Emmanuel,* 42 Wn.2d 799, 259 P.2d 845 (1953). Here the jury was so instructed. The failure of the court in the case at bench to define further one of those elements is not within the ambit of the constitutional rule. The claimed error not being of constitutional magnitude, we need not treat it here.

*Ng,* at 44 (quoting *Pawling,* at 232).

Our holding in *Allen* in no way conflicts with this reasoning. *Allen* was nothing more than a straightforward application of the technical term rule. The *Allen* opinion neither mentions the constitution, nor implies reliance on

it. Indeed, the constitutionality of the asserted error was not in issue because the instruction was properly excepted to in the trial court. *See Allen,* at 357. Thus, *Allen* does not support Brown's contention that the failure to define a technical term in an instruction is constitutional error that may be raised for the first time on appeal.

Nor does *Davis.* In *Davis,* the Court of Appeals permitted the defendant to challenge for the first time on appeal the trial court's failure to define "robbery" in an instruction on accomplice liability for that crime. As we explained in *Ng,* the error *Davis* deemed to be of constitutional magnitude was the omission from the jury instructions of the elements of the crime of robbery, not the failure to define the word "robbery". *Ng,* at 45; *see also State v. Johnson,* 100 Wn.2d 607, 623, 674 P.2d 145 (1983) (citing *Davis* as case involving error of "nondirection"), *overruled on other grounds in State v. Bergeron,* 105 Wn.2d 1, 711 P.2d 1000 (1985); *Davis,* at 506 (challenge raised on appeal was to "an error of nondirection").

The technical term rule attempts to ensure that criminal defendants are not convicted by a jury that misunderstands the applicable law. Thus, the rule complements the constitutional requirement articulated in *Davis,* and later recognized in *State v. Johnson, supra,* that the jury be informed of all the elements of the crime charged. But the constitutional requirement and the technical term rule are not identical. "[F]ailure to give a definitional instruction is not failure to instruct on an essential element . . ." *State v. Tarango,* ___ N.M. ___, 734 P.2d 1275, 1282 (Ct. App.), *cert. denied,* 105 N.M. 521, 734 P.2d 761 (1987); *see Rohlfing v. State,* 612 S.W.2d 598, 602–03 (Tex. Crim. App. 1981).

The requirements of due process usually are met when the jury is informed of all the elements of an offense and instructed that unless each element is established beyond a reasonable doubt the defendant must be acquitted. *See State v. Johnson, supra* at 623; *State v. McHenry,* 88 Wn.2d 211, 558 P.2d 188 (1977). If a defendant feels the prosecution's case is weak on one of the elements, he may

so argue to the jury. He also may advance his argument in a well crafted instruction, which the trial court may accept or reject, taking into account the relevant law and the defendant's right to present his theory of the case. *See State v. Amezola*, 49 Wn. App. 78, 87, 741 P.2d 1024 (1987). But we find nothing in the constitution, as interpreted in the cases of this or indeed any court, requiring that the meanings of particular terms used in an instruction be specifically defined. Because Brown failed to propose a defining instruction at trial, therefore, he may not raise the absence of such an instruction for the first time on appeal. *Lyskoski,* at 111; *State v. Kroll,* 87 Wn.2d 829, 843, 558 P.2d 173 (1976).

## IV

Brown's appeal presents an opportunity for us to clarify another aspect of *Allen*: the applicability of that case's holding to the other mental states defined in RCW 9A.08-.010(1). *Allen* held that "intent" must be defined according to its statutory definition (when a party so requests) because that definition differs from common understandings of the word's meaning. Here, we are presented with the question of whether "knowledge" must be defined when requested.

Brown argues that RCW 9A.08.010(1)(b) gives "knowledge" a technical meaning, thus triggering the technical term rule. We recognize that some dicta in the *Allen* opinion appears to support this argument. *See Allen,* at 360 ("In defining the hierarchy of four levels of culpability, it is apparent that the Legislature gave these culpable mental states technical meanings as opposed to their commonly understood meanings."). Nevertheless, we cannot agree with Brown's contention.

That "knowledge" has been given a statutory definition does not mean it has acquired a technical meaning. In fact, the definition of "knowledge" set forth in RCW 9A.08-.010(1)(b) merely reiterates the word's plain meaning. The dictionary defines "knowledge" as "the fact or condition of

being . . . aware of something". *Webster's Third New International Dictionary* 1252 (1981). The statute says that a person acts with knowledge when "he is aware of a fact, facts, or circumstances or result described by a statute defining an offense". RCW 9A.08.010(1)(b)(i).[6] We do not perceive these definitions to be substantively different. Thus, we do not believe the technical term rule requires that the jury be instructed on the meaning of "knowledge" when the word is used to define a criminal offense. *Accord, United States v. Smith,* 635 F.2d 716, 720 (8th Cir. 1980).

This is not to say, of course, that reason exists why trial courts should *refuse* requests that "knowledge" be defined. For certain offenses—complicity being one—definitional instructions of "knowledge" are recommended. *See* WPIC 10.51 Note on Use. Trial courts should exercise sound discretion to determine the appropriateness of acceding to requests that words of common understanding be specifically defined. *See State v. Amezola, supra* at 87–88.

Brown's conviction is affirmed.

DOLLIVER, DORE, ANDERSEN, CALLOW, and GOODLOE, JJ., concur.

UTTER, J. (concurring)—I agree with the majority's holding to affirm the conviction. However, I reject the majority's reasoning, which would allow defendants to stand convicted where the jury is not instructed on technical definitions of crucial terms.

The majority holds that it is constitutional error to fail to instruct the jury on elements of a crime but it is not constitutional error to fail to define a technical term essential to one of those elements. This distinction makes no sense. The reason for the rule that juries must be instructed on the elements is identical to the technical term rule: juries

---

[6]As we held in *State v. Shipp,* 93 Wn.2d 510, 516, 610 P.2d 1322 (1980), the alternative meaning set forth in RCW 9A.08.010(1)(b)(ii) is invalid because it contradicts common understandings and is susceptible of unconstitutional interpretations.

must be informed what the applicable law is before they can make a meaningful decision as to guilt or innocence. We cannot presume that jurors already know and understand the law; therefore courts carefully instruct jurors on the law, and presume they then understand and follow those instructions. *E.g., Bordynoski v. Bergner,* 97 Wn.2d 335, 342, 644 P.2d 1173 (1982). No possible purpose is served by allowing juries to deliberate in ignorance of the law.

The majority's holding could create absurd and intolerable results: when, as is too often the case, the "legalese" term in a statute differs significantly from the common definition of a term, there would be no constitutional error in failing to inform the jury what it means. In Washington's criminal code some terms that have meanings different from their common usage are defined in separate sections of the code. Besides the levels of culpability in RCW 9A.08.010, terms such as the following are separately defined: "building" (defined to include fenced areas, vehicles, or railway cars in RCW 9A.04.110(5)); "person" (defined to include corporations in 9A.04.110(17)). Only attorneys and judges can be expected to be familiar with these unnatural definitions.

In other sections of the criminal code, special terms are defined in the context of listing elements of a crime. Lay people, and many lawyers, would be unfamiliar with the definitions of crimes such as the following, were the terms not defined by listing the elements: "compounding" (RCW 9A.76.100); "barratry" (RCW 9.12.010). Under the majority's holding, a defendant is constitutionally entitled to instruction on technical definitions if they are within the listed elements of a crime, but not if they are elsewhere in the criminal code. Thus, a defendant could be convicted of "maintaining a bucket shop" (RCW 9.47.090) without the jury being informed what a bucket shop is (RCW 9.47.080). However, a defendant could not be convicted of "bunco steering" (RCW 9.47.120) without the jury knowing what that term means, as the elements listed define the crime.

Obviously, a defendant is not constitutionally entitled to an instruction defining every term mentioned in the elements of a crime. A definitional instruction is constitutionally required only where the statutory definition is "technical", *i.e.,* has a meaning that differs from the common usage of the term. The only appropriate focus in this case is whether the term "knowledge," as defined in RCW 9A.08.010(1), is technical. This issue was resolved in *State v. Allen,* 101 Wn.2d 355, 678 P.2d 798 (1984), in which this court squarely stated:

> In defining the hierarchy of four levels of culpability, it is apparent that the Legislature gave these culpable mental states technical meanings as opposed to their commonly understood meanings.

*Allen,* at 360.

The majority would overrule this analysis in *Allen,* and hold that the definition of "knowledge" in RCW 9A.08-.010(1) is actually the same as the word's plain meaning. The majority's error lies in the fact that the statutory definition informs jurors what the defendant must have knowledge about; this information is not provided by the common dictionary definition of "knowledge." In the instant case, it was not crucial to give the jury the statutory definition of "knowledge", because the jury was otherwise correctly informed what the subject of the knowledge must be. The court instructed the jury the defendant must have "knowledge that [his actions] will promote or facilitate the commission of the crime." Instruction 7. Thus, the jury instructions, read as a whole, accurately stated the law. *See State v. Thompson,* 88 Wn.2d 518, 564 P.2d 315 (1977).

In other contexts, crimes with a mens rea of "knowledge" do not include in their elements information as to what type of knowledge the defendant must have. In such cases the jury must be given an instruction based on RCW 9A.08.010(1)(b)(i): "A person knows or acts knowingly or with knowledge when . . . he is aware of a fact, facts, or circumstances or result described by a statute defining an offense". For example, the criminal trespass statute defines

the crime as follows: "A person is guilty of criminal trespass in the first degree if he knowingly enters or remains unlawfully in a building." RCW 9A.52.070(1). In this case, the jury must be instructed on the definition of "knowingly" in RCW 9A.08.010(1)(b). Otherwise, applying the common definition of "knowingly," it may convict on a mere finding the defendant knows he is entering a building (such as a railway car).

I would hold that a defendant is constitutionally entitled to jury instructions on technical statutory definitions of terms that are used in listing elements of a crime. Here, because "knowledge" has a technical statutory definition, it would have been constitutional error to fail to give that definition to the jury, were it not for the fact that the instruction otherwise properly defined this term in the context of the crime. I therefore find no constitutional error under the narrow facts of this case, and would affirm.

PEARSON, C.J., and BRACHTENBACH, J., concur with UTTER, J.