IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34528-9-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOSHUA V. FOWLER, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Joshua Fowler appeals from his convictions for unlawful possession of a firearm and attempting to elude a pursuing police vehicle, raising two challenges to the latter conviction. We affirm.

FACTS

The incident in question arose when Sergeant Kurt Vigesaa of the Spokane Police Department, while driving in his patrol car, recognized Mr. Fowler as the driver of an oncoming vehicle. The two men made eye contact and the officer made a U-turn to get his vehicle behind Fowler's. The sergeant had recently stopped Mr. Fowler for driving while license suspended.

When the officer made the U-turn, Mr. Fowler accelerated his vehicle away from the patrol car. Sergeant Vigesaa responded by turning on his lights and siren and followed in pursuit. After four or five blocks, Mr. Fowler pulled into the parking lot of an apartment complex. He stopped the car and fled to the southeast, while his passenger, Haley Lloyd, fled to the west. The sergeant followed Mr. Fowler with his patrol vehicle for a distance before parking and chasing him on foot. During the foot pursuit, Vigesaa observed Fowler reach into his waistband while running through an area of shrubs and trees. Shortly thereafter, he surrendered.[1]

The prosecutor filed charges of second degree unlawful possession of a firearm, possession of a stolen firearm, and attempting to elude a pursuing police officer. The matter proceeded to jury trial.

Several times during the testimony of Sergeant Vigesaa, the prosecutor asked him to describe the defendant's driving. On one occasion, the officer responded that Mr. Fowler "upon seeing me and making a U-turn, immediately tries to elude me." Report of Proceedings (RP) at 133. Later, the prosecutor asked for a description of the driving through intersections:

---

[1] After arresting Fowler, Vigesaa checked the shrubbery and found a .45 Smith & Wesson handgun along with a box of ammunition. The gun's owner later reported it missing and identified the recovered weapon as his.

2

> [Sergeant Vigesaa]: Well, he was attempting to elude me. He was driving recklessly at speeds almost twice the speed limit and was not reducing his speed at each one of these uncontrolled intersections.
>
> [Prosecutor]: In your mind, how did you know or believe that he was trying to elude you?
>
> [Sergeant Vigesaa]: I've been doing this job for almost 25 years. I've had numerous people run from me, elude me. I knew immediately upon—that he was driving normal. And upon seeing me and his acceleration and his failure to stop/pull over, which normal—normal—is the normal behavior for citizens upon hearing lights and sirens—his behavior was to drive faster, recklessly, and try to get away from me.

RP at 137. On another occasion, the prosecutor asked about Mr. Fowler's speed:

> [Sergeant Vigesaa]: I said approximately 45 miles an hour. That's a fluctuation of me a little bit and trying to catch up to him; so we were not exactly traveling at 45 miles per hour, but it fluctuated as he's trying to elude me and I'm trying to catch that. And I base that on an average of each time I looked down at the speedometer.
>
> [Prosecutor]: At what moment and what precise location, if you can estimate, did you turn on and activate both your audible and visual sirens on your vehicle?
>
> [Sergeant Vigesaa]: I . . . immediately noticed he was trying to elude. I initially hit my emergency lights, and I knew at this point that he was trying to get away. And at that point, I activated my siren with my emergency lights.

RP at 140. No objection was raised to any of the noted testimony.

Mr. Fowler testified in his own defense that he had fled from Sergeant Vigesaa at the urging of his passenger, Ms. Haley, who had outstanding arrest warrants. In closing argument, defense counsel conceded the eluding charge in order to argue for acquittal on the two firearms counts:

> There are facts in this case that are just not in dispute. There are elements, as [the prosecutor] eloquently went through, that have been proven by the

state beyond a reasonable doubt. Mr. Fowler, in his Yukon with his girlfriend, felony warrant next to him, at some point, one or both see Sergeant Vigesaa. They decide, Nope, warrant. Go, run. They do.

They take off for a few blocks, go into a parking lot, stop. He was driving with a suspended license, but he didn't have a warrant, but he was clearly trying to get away. Yeah, he was eluding. He was attempting to, anyway; no question about that. It's not in dispute.

What else isn't in dispute? Well, he is a convicted felon. We know that. We've talked about it already. He's been convicted of three forgeries. You heard his testimony on the stand. He pled guilty to those. Why? He said he did it. He didn't take those to trial, but here he is in trial today. And again, it's not because of the elude. He's already admitted to that on the stand. The state's right. He did that. But here's what's not clear, and here's what he didn't do. He didn't possess a firearm; and even if he did, he sure didn't know it was stolen.

RP at 293-294. Counsel also argued:

There was some mention in the state's first closing about reckless driving. It is part of attempt to elude. I think there is some question as to how reckless the driving was, but again, Mr. Fowler said he was trying to get away, that he was traveling over the speed limit. I think there's some question of how many people were wherever.

You also heard Sergeant Vigesaa testify that, Yeah, sometimes we actually end pursuit if it's too dangerous. Well, he didn't do that here. But as I already said, Mr. Fowler admitted to eluding. That's something that's not in dispute. The elements are satisfied by the state there, but they're not satisfied with respect to possession of the firearm because he didn't have it.

RP at 302.

The court instructed the jury on the elements of attempting to elude:

[E]ach of the following elements of the crime must be proved beyond a reasonable doubt:

    1) That on or about September 5th, 2014, the defendant drove a motor vehicle;

    2) That the defendant was signaled to stop by a uniformed police officer by hand, voice, emergency light, or siren;

3) That the signaling police officer's vehicle was equipped with lights and siren;

4) That the defendant willfully failed or refused to immediately bring the vehicle to a stop after being signaled to stop;

5) That while attempting to elude a pursuing police vehicle, the defendant drove his vehicle *in a manner indicating a reckless manner*; and

6) That the acts occurred in the state of Washington.

Clerk's Papers (CP) at 95 (emphasis added). The definitional instruction told the jury that the offense required proof that the vehicle was driven "in a reckless manner." CP at 94 (Instruction 7). There were no objections to these instructions.

The jury convicted on the eluding and unlawful possession counts, but acquitted on the stolen firearm charge. After the court imposed a standard range sentence, Mr. Fowler appealed to this court. A panel considered the matter without argument.

ANALYSIS

This appeal raises two arguments. First, we briefly consider Mr. Fowler's contention that Sergeant Vigesaa improperly expressed an opinion by repeated use of the word "elude." We then consider whether the elements instruction prejudiced Mr. Fowler's trial.

*Testimony*

Mr. Fowler argues that the repeated use of the word "elude" during the testimony of the officer constituted improper opinion testimony. Without deciding that issue, it is clear that any error was not manifest and was completely harmless in light of the defendant's own testimony and the concession that the elements were established.

Witnesses are not permitted to opine as to the guilt of the defendant. *State v. Black*, 109 Wn.2d 336, 348, 745 P.2d 12 (1987). A proper objection must be made at trial to perceived errors in admitting or excluding evidence; the failure to do so precludes raising the issue on appeal. *State v. Guloy*, 104 Wn.2d 412, 421, 705 P.2d 1182 (1985), *cert. denied*, 475 U.S. 1020 (1986). "'[A] litigant cannot remain silent as to claimed error during trial and later, for the first time, urge objections thereto on appeal.'" *Id.* (quoting *Bellevue Sch. Dist. 405 v. Lee*, 70 Wn.2d 947, 950, 425 P.2d 902 (1967)).

An exception to this general rule exists if the issue involves a manifest error affecting a constitutional right. RAP 2.5(a). A party claiming the existence of manifest constitutional error is first required to establish the existence of error that is constitutional in nature. If such an error is demonstrated, the party must then show that the error was not harmless and actually had an identifiable and practical impact on the case. *State v. Scott*, 110 Wn.2d 682, 687-688, 757 P.2d 492 (1988); *State v. Kirkman*, 159 Wn.2d 918, 934-935, 155 P.3d 125 (2007). Opinion testimony indirectly related to an ultimate fact is not a "manifest" constitutional error that may be raised for the first time on appeal. *Kirkman*, 159 Wn.2d at 936.

6

The word "elude" is a synonym for "evade" or "escape."[2] Given the name of the crime of attempting to elude, as well as its elements, we recommend that officers avoid use of the word "elude" when describing flight or other evasive behavior. But, even if the officer erred here, any error was not meaningful in light of the defense theory of the case. The defendant himself admitted he was trying to evade the officer in order to allow his passenger to escape capture. Defense counsel agreed with that factual position in his closing argument and used it to ask the jury to hold his client accountable for the offense he agreed he had committed (the eluding) while acquitting him on the (more serious) firearm charges. That approach proved successful in part.

Under these circumstances, Mr. Fowler cannot show that he was prejudiced by the officer's testimony. Accordingly, he has not established that manifest constitutional error occurred. We therefore decline to further consider this claim.

*Jury Instruction*

Mr. Fowler also argues that the elements instruction was constitutionally defective. We again conclude that, despite the extraneous verbiage in the instruction, he has not established manifest constitutional error.

---

[2] *Webster's Third New International Dictionary* at 738, in part, recognizes modern meanings for the word as including: 2 : to avoid slyly or adroitly (as by artifice, stratagem, or dexterity) : EVADE 3 : to escape the notice or perception; syn see ESCAPE.

A challenge on appeal to a jury instruction that was not challenged in the trial court is treated similarly to the evidentiary issue previously discussed. Only if the alleged instructional error raises a question of manifest constitutional error is the claim reviewable under RAP 2.5(a). *Scott*, 110 Wn.2d at 687-688. Again, he has not met the burden of establishing prejudicial error that makes his claim manifest.

The eluding statute currently prohibits driving "in a reckless manner" while fleeing a police officer. RCW 46.61.024. Prior to its amendment in 2003, the eluding statute had prohibited driving in a "manner indicating a wanton or wilful disregard for the lives or property of others." Former RCW 46.61.024 (2002). The instruction used in this case grafted on the "manner indicating" language of the former statute to the current "reckless manner" standard. Mr. Fowler argues that by doing so, the instruction altered the elements so that the State needed to only prove the appearance of driving in a reckless manner rather than that he had actually driven in a reckless manner.

Although the language is erroneous, we disagree that "indicating" means what Mr. Fowler says that it means. That particular verb has many meanings, including to show, demonstrate, or to point out.[3] While the language of this hybrid instruction is strange and erroneous, it did not necessarily dilute the prosecutor's burden of proof. Instruction 7

---

[3] *Id.* at 1150.

properly defined the crime for the jury, making it unlikely that the elements instruction would be read as Mr. Fowler suggests.

However, the error is not manifest for the same reasons that the officer's testimony did not constitute manifest constitutional error. Defense counsel agreed that the elements of the crime were established and argued that point to the jury as part of the defense strategy for acquittal on the greater crimes. Having conceded this offense to the jury, Mr. Fowler simply does not have a colorable claim of manifest constitutional error from the inapt wording of this instruction.

The convictions are affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Korsmo, J.

WE CONCUR:

Fearing, C.J.

Lawrence-Berrey, J.

9