IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

STATE OF WASHINGTON,               )
                                   )         No.  35565-9-III
            Respondent,            )
                                   )
      v.                           )
                                   )
MELVIN R. O'ROURKE,                )         UNPUBLISHED OPINION
                                   )
            Appellant.             )

KORSMO, J. — Melvin O'Rourke appeals from his conviction for second degree

murder, arguing that the prosecutor committed misconduct and his counsel performed

ineffectively.  We affirm.

FACTS

Mr. O'Rourke invited his friend Duane Hettinger to come to his home on July 30,

2015, despite the fact that O'Rourke had obtained a no-contact order prohibiting

Hettinger from contacting him.  The ostensible purpose of the meeting was to enter a

repayment plan for reimbursement for items Hettinger allegedly stole from him.

Hettinger entered the residence, O'Rourke locked the door behind him, and the two men

sat in chairs.  After 20 minutes of silently sitting and staring at the floor, Hettinger stood

up. Believing that Hettinger was coming for him, O'Rourke pointed a gun at him. Hettinger put up his arms and said "no."

O'Rourke shot Hettinger and, after the victim stopped breathing, called 911 to report that he had shot a burglar and that the wounded man was still breathing. In subsequent interviews with law enforcement, he admitted that he locked the door so that Hettinger could not "get out real quick" and that he did not call 911 until Hettinger was dead. He also told police that he shot Hettinger because he had been stealing from him. In one interview he claimed not to know how Hettinger entered the apartment. A single second degree murder charge was filed.

The case proceeded to jury trial. The defense successfully obtained an instruction on self-defense. Mr. O'Rourke testified on both direct and cross-examination about the shooting, including the facts related above. He explained how he had to go behind a chair, retrieve his gun from a pile of laundry, locate and put the magazine in, and "rack" the gun before aiming it, with some difficulty, at Hettinger. When asked by his attorney why he believed Hettinger was going to step towards him, Mr. O'Rourke responded: "When I was a kid, my dad raped me when I was four." Report of Proceedings (RP) at 655. The prosecutor objected on relevance grounds and the court sustained the objection because the answer was nonresponsive, but the answer was never struck. *Id.* Defense counsel rephrased the question and Mr. O'Rourke started explaining that "I was able

throughout my early years to see before . . ." when another objection was raised and sustained. RP at 656.

Counsel was directed to limit his client's response to a description of the physical behavior Hettinger exhibited that made Mr. O'Rourke believe his guest was moving to attack him. Counsel assured the court that was what he had been trying to accomplish. Counsel then asked "what did your eyes see or what did you perceive" that made him think Hettinger was coming for him. *Id*. He answered: "His eyes had the look that I had seen many, many times before." RP at 656-657. His counsel confirmed the answer— "So, his eyes had a look, right?" "Yes." RP at 657.

During cross-examination, Mr. O'Rourke recreated the shooting with a toy gun and the prosecutor playing the role of Mr. Hettinger. The State also presented a witness who testified that O'Rourke told him he purchased a gun for the express purpose of shooting Hettinger "if he ever stole from him again." RP at 285.

The defense urged the jury to find self-defense, but the jury returned a guilty verdict and also returned a special verdict that Mr. O'Rourke was armed with a firearm at the time of the crime. The trial court imposed a high-end standard range sentence. Mr. O'Rourke appealed to this court. A panel considered his case without hearing argument.

ANALYSIS

This appeal presents claims of prosecutorial misconduct and attorney ineffectiveness. We address those two issues in the noted order and do not separately address his claim of cumulative error.

*Prosecutorial Misconduct*

Mr. O'Rourke alleges that the prosecutor committed misconduct on multiple bases, but primarily by asserting his personal opinion during cross-examination and closing argument. Because any potential error was curable by timely objection, the argument fails.

Claims of prosecutorial misconduct are considered in accordance with well settled standards. The appellant bears the burden of demonstrating prosecutorial misconduct on appeal and must establish that the conduct was both improper and prejudicial. *State v. Stenson*, 132 Wn.2d 668, 718, 940 P.2d 1239 (1997). Prejudice occurs where there is a substantial likelihood that the misconduct affected the jury's verdict. *Id.* at 718-719. The allegedly improper statements should be viewed within the context of the prosecutor's entire argument, the issues in the case, the evidence discussed in the argument, and the jury instructions. *State v. Brown*, 132 Wn.2d 529, 561, 940 P.2d 546 (1997).

Reversal is not required where the alleged error could have been obviated by a curative instruction. *State v. Gentry*, 125 Wn.2d 570, 596, 888 P.2d 1105 (1995). The failure to object constitutes a waiver unless the remark was so flagrant and ill-intentioned

that it evinced an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury. *Id.*; *State v. Swan*, 114 Wn.2d 613, 665, 790 P.2d 610 (1990); *State v. Belgarde*, 110 Wn.2d 504, 507, 755 P.2d 174 (1988). Finally, a prosecutor has "wide latitude" in arguing inferences from the evidence presented. *Stenson*, 132 Wn.2d at 727.

These standards are reflections of a basic truth of appellate litigation. Appellate courts review trial court rulings; where there is no trial court ruling to challenge, appellate review normally is not available. RAP 2.5(a). There are certain exceptions to this doctrine that recognize a small class of errors that can be reviewed even in the absence of a trial court challenge. The most common of those exceptions, found in RAP 2.5(a)(3), permits review of a manifest error affecting a constitutional right. A party claiming the existence of manifest constitutional error is first required to establish the existence of error that is constitutional in nature. If such an error is demonstrated, the party must then show that the error was not harmless and actually had an identifiable and practical impact on the case. *State v. Kirkman*, 159 Wn.2d 918, 934-935, 155 P.3d 125 (2007); *State v. Scott*, 110 Wn.2d 682, 687-688, 757 P.2d 492 (1988).

Appellant's initial problem is that all but one of the alleged instances of misconduct were not challenged at trial.[1] Thus, the "flagrant and ill-intentioned"

---

[1] In one instance, a defense objection to the prosecutor's statement was sustained. Appellant does not attempt to argue that the trial court's ruling was ineffectual.

5

standard applies and appellant must demonstrate that the alleged misconduct was beyond cure. He cannot meet that standard. For instance, noting a handful of comments by the prosecutor using words such as "I don't think" and "I don't know" during argument on objections, Mr. O'Rourke opines that the prosecutor was injecting his personal beliefs into the litigation. That is an exceptionally long leap in logic that is not borne out by the context of the statements. More fundamentally, even if such an interpretation could be placed on the prosecutor's arguments to the bench, it is not a necessary interpretation and any concerns would easily have been cured by the trial court.

The appellant's remaining arguments fare no better. He identifies some argumentative questions asked by the prosecutor, but fails to demonstrate that they were so egregious that the trial court could not have corrected the problem by having the prosecutor rephrase the question. He notes some instances when the prosecutor cross-examined him about reports he made to the police involving early incidents with Hettinger and alleges that the questions injected facts into the current trial. Again, he does not demonstrate that the trial court could not have corrected the problem.[2]

Since there has been no demonstration of incurable error, Mr. O'Rourke's claim of prosecutorial misconduct necessarily fails.

---

[2] A timely objection might have led to the prosecutor introducing the reports into evidence in order to contradict Mr. O'Rourke's testimony and arguably done more damage than the questions would have.

*Ineffective Assistance of Counsel*

Mr. O'Rourke next argues that his trial counsel performed ineffectively by not objecting to evidence offered at trial.

We also consider this issue in accordance with well settled law. Counsel's failure to live up to the standards of the profession will require a new trial when the client has been prejudiced by counsel's failure. *State v. McFarland*, 127 Wn.2d 322, 334-335, 899 P.2d 1251 (1995). Review is highly deferential and we engage in the presumption that counsel was competent; moreover, counsel's strategic or tactical choices are not a basis for finding error. *Strickland v. Washington*, 466 U.S. 668, 689-691, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Under *Strickland*, courts apply a two-prong test: whether or not (1) counsel's performance failed to meet a standard of reasonableness and (2) actual prejudice resulted from counsel's failures. *Id*. at 690-692. When a claim can be resolved on one ground, a reviewing court need not consider both *Strickland* prongs. *Id*. at 697; *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726 (2007).

When counsel's alleged ineffectiveness, as here, involves evidentiary matters, an appellant has an exceptionally difficult challenge. As a general matter, an objection must be made at trial to perceived errors in admitting or excluding evidence; the failure to do so precludes raising the issue on appeal. *State v. Guloy*, 104 Wn.2d 412, 421, 705 P.2d 1182 (1985). "'[A] litigant cannot remain silent as to claimed error during trial and later, for the first time, urge objections thereto on appeal.'" *Id*. (quoting *Bellevue Sch. Dist.*

*405 v. Lee*, 70 Wn.2d 947, 950, 425 P.2d 902 (1967)).  Thus, challenges to counsel's handling of evidence are circumscribed by the *Strickland* presumption.  As a general principle, the decision whether or not to object to evidence is a classic example of trial tactics and will not provide a basis for finding counsel performed ineffectively.  *E.g.*, *State v. Madison*, 53 Wn. App. 754, 763, 770 P.2d 662 (1989) ("The decision of when or whether to object is a classic example of trial tactics.").  A reviewing court presumes that a "failure to object was the product of legitimate trial strategy or tactics, and the onus is on the defendant to rebut this presumption."  *State v. Johnston*, 143 Wn. App. 1, 20, 177 P.3d 1127 (2007) (citing cases).

It is highly doubtful that Mr. O'Rourke has overcome the presumption that the various failures to object were not trial tactics.  However, we need not decide that issue because it is very clear that any error did not undermine our confidence in the verdict and did not constitute prejudice under the *Strickland* standard.

There was no prejudice because the essential facts of this case were undisputed and the evidence that Mr. O'Rourke belatedly now claims should have been challenged did not impact the ultimate decision before the jury—was the killing justified?  His own testimony supported the State's evidence that Mr. O'Rourke now challenges and his demonstration of the shooting for the jury left no doubt how it took place.  The focus for the jury's decision was Mr. O'Rourke's claim that he was justified in shooting Hettinger.  Little of the unchallenged evidence addressed that aspect of the case, and none of that

evidence carried weight in assessing Mr. O'Rourke's explanation for shooting an unarmed man, particularly where his own testimony strongly suggested that he acted to punish the victim rather than to protect himself.

Mr. O'Rourke failed to establish his *Strickland* burden of proving that he was prejudiced by his counsel's alleged failure to object. Accordingly, he failed to demonstrate that he was deprived of his right to counsel.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Korsmo, J.

WE CONCUR:

Fearing, J.

Siddoway, J.