
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| PATRICIA L. WEST and CHERYL A. RITTS, as Co-Trustees of the Breeden Family Trust and Survivor's Trust, | ) ) ) ) | No. 37320-7-III |
| Respondents, | ) ) | |
| | ) | UNPUBLISHED OPINION |
| v. | ) ) | |
| MARK S. RITTS, | ) ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Mark Ritts appeals after the trial court directed a writ of restitution to be issued restoring possession of the agricultural property to its owner. We affirm.

FACTS

A. Beryl Breeden was the successor trustee of the Breeden Family Trust and the Breeden Family Living Trust. The trusts owned real property, including the agricultural property that is the subject of this dispute.

Ms. Breeden has two daughters, Patricia West and Cheryl Ritts. Cheryl Ritts is the mother of Mark Ritts.

In 2013, Ms. Breeden, as successor trustee of the trusts, leased agricultural property to Mark Ritts. The lease term ended September 30, 2017, or upon completion of the 2017 harvest, whichever was later. Mr. Ritts held over more than 60 days beyond the lease term.

By October 2018, Ms. Breeden was 97 years old, had issues with her eyesight and memory, and was not capable of making her own decisions. That month, Ms. West obtained a protective order that prohibited Mr. Ritts from being within 1,000 feet of the farm property, including the building in which he stored his agricultural equipment.[1]

In December 2018, Ms. West, purportedly on behalf of the trusts, commenced the first of two unlawful detainer actions against Mr. Ritts. In March 2019, a superior court commissioner heard the matter. The commissioner orally determined that Ms. West lacked the power or authority to act on behalf of the trusts. On May 10, 2019, written findings of fact and conclusions of law were entered, together with a formal order.

---

[1] The protective order is not part of the record, so we do not know what findings the trial court made prior to its entry. Mr. Ritts asserts his aunt refused to modify the order but does not explain why he never sought court modification.

Conclusion of law 2.4 states: "Defendant, Mark S. Ritts, is a hold over tenant pursuant to

RCW 59.12.035."[2]  Clerk's Papers (CP) at 69.

That month, because Ms. Breeden had dementia, Ms. West and Ms. Ritts were

formally appointed cotrustees of the trusts.  They promptly sent a notice of default to Mr.

Ritts.  The notice claimed he was in violation of nine lease covenants, including failure to

farm the property in "a good and farmerlike manner."  CP at 36-37.  Referencing section

11 of the lease, the notice warned Mr. Ritts that if he failed to cure the violations within

15 days, the lease would be declared forfeited.  Because the protective order barred him

from the property, Mr. Ritts could not timely cure the violations (unless he hired someone

to farm the property for him).

---

[2]  We quote RCW 59.12.035 in its entirety, italicizing language we later refer to in this opinion and underlining language relied on by Mr. Ritts in his appeal:

> In all cases of tenancy upon agricultural lands, where the tenant has held over and retained possession for more than sixty days after the expiration of his or her term without any demand or notice to quit by his or her landlord or the successor in estate of his or her landlord, if any there be, he or she shall be deemed to be holding by permission of his or her landlord or the successor in estate of his or her landlord, if any there be, and shall be entitled to hold under the terms of the lease *for another full year*, <u>and shall not be guilty of an unlawful detainer</u> *during said year*, and such holding over for the period aforesaid shall be taken and construed as a consent on the part of a tenant to hold *for another year*.  (Emphasis added.)

3

On June 14, 2019, the cotrustees sent Mr. Ritts a written confirmation of the termination of the lease. The notice said that Mr. Ritts had failed to timely cure the defaults and the lease was forfeited.

On July 5, 2019, the cotrustees filed a second complaint for unlawful detainer against Mr. Ritts. They asserted that Mr. Ritts had defaulted under the lease yet remained in unlawful possession and requested a writ of restitution to restore possession to them. Mr. Ritts answered the complaint by asserting he had been declared a holdover tenant in the first unlawful detainer action, that the October 2018 protective order was illegal because Ms. West had no legal authority to bar him from the property, and he requested the trial court to restore possession to him.

On August 1, 2019, the court commissioner once again heard the parties' arguments. The commissioner modified the protective order to permit Mr. Ritts to harvest the barley but continued the hearing for evidence of Ms. Breeden's competency to determine whether the cotrustees had properly replaced her. The cotrustees filed and served pleadings prior to the continued hearing that established that Ms. Breeden indeed was incompetent.

On September 5, 2019, the commissioner issued an order granting a writ of restitution. The order stated in pertinent part:

4

      2.     The Crop Share Lease expired in September of 2017, and any holdover tenancy was terminated by this court's order on August 1, 2019.

      3.     . . . Mark L. Ritts has been prohibited from entering the property since October 24, 2018 but a substantial amount of his personal property remained on the leased premises and remains there to this day.

      4.     There is no substantial issue of material fact as to the rights of Plaintiffs as to the right to reassume full possession of the property and to effect the removal of the Defendant's personal property and to declare the lease terminated . . . ;

      5.     Ms. Breeden has been determined to be incompetent and the Plaintiffs are the proper successor trustees.

      6.     A Writ of Restitution shall be issued . . . evicting Defendant and any current occupants of said premises; PROVIDED, that Defendant may enter onto the property up through midnight on October 13, 2019 for the limited purpose of removing any or all of his personal property.

. . . .

      11.     The Court reserves jurisdiction to consider fees, costs and sanctions . . . .

CP at 178-79.

On September 11, 2019, the cotrustees filed their request for attorney fees and costs in the amount of $12,272.53. Soon after, the county clerk issued the writ directing the sheriff to restore the premises to the cotrustees.

On September 16, 2019, Mr. Ritts filed a motion for revision. In his written pleading, he raised two arguments: (1) the notice of default was improper and (2) the cotrustees' complaint was moot because the cotrustees were in possession. He does not raise the first argument on appeal. He did raise the second argument, but only briefly in the following sentence:

In this case, revision by the Court is necessary due to the Commissioner's failure to consider that [sic] fact the Plaintiffs already had possession of the property so their complaint for unlawful detainer was moot and should have been dismissed.

CP at 229.

At the revision hearing, Mr. Ritts told the court that possession was at issue, and he raised only his first argument—that the notice of default was improper:

[Your May 2019] order found that Ms. [West] didn't have authority to act as a trustee [and on that basis the] unlawful detainer action [was] dismissed.

[B]efore your ruling came down, in October of '18, Ms. West went to District Court and got a protective order denying Mr. Ritts' [sic] access to any properties that she managed for the trust which involved the very property that she was leasing to him under the trust. Based upon your order that was entered in May of '19, she had no authority to . . . manage the trust. That District Court order really lacks the same legality that her unlawful detainer action brought, but they continued to enforce that against Mr. Ritts and bar him from the property—the farm that he had a lease.

[Y]our 2019 May order gave Mr. Ritts a right to hold, to be a holdover tenant for 2019. *So, he had a holdover right to farm the land in 2019* [but] they were enforcing the protective order preventing him from going on the property. All of his, [much] of his equipment, tools that he gathered over 20 years are still there on the property, and *Mr. Ritts always maintained he had a right to possession, but they wouldn't let him farm it.*

[Mr. Ritts then makes his legal argument that the notice of default was improper, and the action must therefore be dismissed.]

So, that's exactly where we're at in this case, your Honor. My client has tried to get possession. . . . We tried to get the court commissioner to

6

give him possession. . . . *So, the entire case turns [on] whether there was a proper notice.*

Report of Proceedings (RP) (Nov. 12, 2019) at 88-91 (emphasis added).

The trial court disagreed with Mr. Ritts's notice argument, agreed with the court commissioner's decision, denied revision, and granted the cotrustees' request for attorney fees and costs. It later entered an order granting attorney fees and costs.

Mr. Ritts timely appealed.

ANALYSIS

Mr. Ritts raises two arguments on appeal. Citing RCW 59.12.035, he argues his status as a "holdover tenant" in 2019 prohibited his eviction. Next, citing RCW 59.12.060, he argues the trial court had no authority to evict him because he was not in "actual occupation" of the property when the complaint was filed. We decline to review either of these unpreserved claims of error.

Our Supreme Court has explained the rule of error preservation:

> The general rule in Washington is that a party's failure to raise an issue at trial waives the issue on appeal . . . . This standard comes from RAP 2.5(a), which permits a court to refuse to consider claimed errors not raised in the trial court, subject to certain exceptions. . . .
> The purpose underlying our insistence on issue preservation is to encourage "the efficient use of judicial resources." *State v. Scott*, 110 Wn.2d 682, 685, 757 P.2d 492 (1988). Issue preservation serves this purpose by ensuring that the trial court has the opportunity to correct any errors, thereby avoiding unnecessary appeals.

*State v. Robinson*, 171 Wn.2d 292, 304-05, 253 P.3d 84 (2011).

Mr. Ritts's first argument on appeal focuses on language in RCW 59.12.035 that arguably prohibits an unlawful detainer action from being brought against a holdover tenant. *See* underlined statutory language quoted in footnote 2, *supra*. Mr. Ritts did not raise this argument in his written revision motion. During the revision hearing, he did argue he was a holdover tenant during 2019 and had a right of possession. But he never raised the argument he now raises on appeal, that RCW 59.12.035 *prohibits* an unlawful detainer action from being brought against a holdover tenant. The revision court did not rule on the issue Mr. Ritts now raises because Mr. Ritts did not argue it below. For this reason, we will not review it on appeal.

Mr. Ritts's second argument on appeal focuses on language in RCW 59.12.060 that arguably requires a tenant to be in "actual occupation" when an unlawful detainer action is commenced. He very briefly alluded to this argument in his written revision motion by stating that the action was moot because the cotrustees were in possession. He did not cite RCW 59.12.060 in that argument or any case authority. During the revision hearing, he did not discuss or develop this argument. We may decline to consider an issue that was inadequately argued below. *State v. Lazcano*, 188 Wn. App. 338, 355, 354 P.3d 233 (2015). To be adequate for appellate review, the argument below should have

8

been more than fleeting. *Id.* The revision court did not rule on the issue Mr. Ritts now

raises because Mr. Ritts so cursorily and vaguely argued it in his written motion. For this

reason, we will not review it on appeal.[3]

*Attorney fees and costs*

Both parties request an award of reasonable attorney fees and costs, and both rely

on the contractual attorney fee clause in the lease. Subject to their compliance with

RAP 18.1(d), we grant the cotrustees' request for reasonable attorney fees and litigation

costs.

---

[3] We note that Mr. Ritts's status as a holdover tenant expired one year after the lease terminated in late 2017. *See* italicized statutory language quoted in footnote 2, *supra*. For this reason, Mr. Ritts did not have any legal basis to remain on the property in 2019. Although the May 2019 order in the first unlawful detainer action concluded that Mr. Ritts "is a hold over tenant," the tense is likely a scrivener's error. CP at 69.

9

No. 37320-7-III
*West v. Ritts*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____        _____
Fearing, J.                                              Staab, J.