IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 37067-4-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROGELIO DELGADO RODRIGUES, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, A.C.J. — Rogelio Delgado Rodrigues appeals his conviction for attempting to elude a police vehicle. He complains about a testifying officer's reference at his trial to having learned about Mr. Rodrigues's outstanding warrants at a "regional gang intelligence meeting," but he fails to point to any objection made that was overruled

or otherwise inadequately addressed by the trial court. Error, if any, was not preserved.

We affirm.

## FACTS AND PROCEDURAL BACKGROUND

In the summer of 2019, at a regional law enforcement meeting at which ongoing investigations are reviewed, one of the "wanted" individuals whose name was brought up was Rogelio Delgado Rodrigues. Report of Proceedings (RP) at 169. It was reported that there were several warrants for his arrest, and he was believed to be staying at a Motel 6 in Richland. His photograph was passed around.

Richland police officer Jeff Muai conducted surveillance at the Motel 6 that day and the next. On the first day, he did not see Mr. Rodrigues but saw his car, a black Toyota Camry. The next evening, Officer Muai saw a man matching Mr. Rodrigues's description arrive at the Motel 6 in a different car, a red Hyundai Tiburon. The man was wearing a flannel shirt, jeans, and a cowboy hat. The car was not registered to Mr. Rodrigues. Officer Muai saw the man leave and return in the red Tiburon. When he saw the man leave a second time, Officer Muai alerted other police units in the vicinity.

Richland officers attempted to perform a traffic stop of the Tiburon without success. After initially appearing to stop, the driver of the Tiburon sped away, and a multi-police car chase ensued. Officers eventually lost sight of the Tiburon.

The Tiburon was quickly found, however, sans its driver. It was then about 11:30 p.m. A few minutes later, officers saw Mr. Rodrigues walking down the street,

approximately 230 feet away from where the Tiburon was parked. He was wearing a

white sweater rather than a flannel shirt, and no hat. But officers found a flannel shirt

and a cowboy hat in the area, and Officer Muai confirmed that they matched the shirt and

hat that the man at the Motel 6 had been wearing. A letter addressed to "Rogelio

Delgado" was found in the trunk of the red Tiburon.[1]

Mr. Rodrigues was later arrested and charged with attempting to elude a pursuing

police vehicle. His defense at his jury trial was mistaken identity.

At trial, during the prosecutor's direct examination of Officer Muai, he asked how

the officer became aware of Mr. Rodrigues:

> Q. On June 26th, did you become aware of Mr. Rogelio Rodrigues?
> A. Yes
> Q. How so?
> A. *I was in a regional gang intelligence meeting.* We meet once a month.

RP at 167 (emphasis added). Counsel for Mr. Rodrigues said, "Objection," and

requested a side bar, at which the following exchange took place:

> THE COURT: What's your concern, [counsel]?
> [DEFENSE COUNSEL]: I'm very concerned about where this is going as far as his gang membership.

---

[1] While the defendant's full name is Rogelio Delgado (or Delagado, the record is inconsistent) Rodrigues, defense counsel and appellate counsel have consistently referred to him as "Mr. Rodrigues." At trial, defense counsel characterized Rogelio Delgado as a "wrong" name for his client. RP at 268-69.

3

[PROSECUTOR]:  Oh, no.  This is just that meeting he mentioned he did last week of where he learned and saw the photos of Mr. Rodrigues and about the two warrants, and I can even use my questioning to confirm that this was not a discussion about gang activity but just a meeting—that is the name of the meeting.

[DEFENSE COUNSEL]:  Okay.  Never mind.  I'm sorry.

THE COURT:  All right.  Go ahead and ask a leading question so that we can get over this hump.

RP at 167-68.

Testimony resumed:

Q.  Now, you indicated that—the name of the group is just that's the type of the—the name of the meeting?

A.  That's the name.

Q.  The regional gang investigation meeting, just a meeting about various ongoing investigations, topics, correct?

A.  Yes.

Q.  Was one of those topics the warrants that Mr. Rodrigues had?

A.  Yes.

Q.  What did you learn—how did you become familiar with Mr. Rodrigues?

A.  So, at the meeting his name was brought up as a wanted subject.  We passed his photo around.  The Pasco Street Crimes Unit, who was also there, had brought that up.  They had information that he was at the Richland Motel 6 with his suspected girlfriend, and that they were in a black Toyota Camry.

RP at 168-69.

Defense counsel did not object to this testimony, request an instruction, or ask any clarifying questions of his own about the meeting.  The word "gang" did not come up again during the trial.  The only other mention of the meeting was a neutral one, in

4

closing argument, when the prosecutor said to jurors, "We heard from Officer Muai. June 26th he first became aware of the defendant's outstanding warrants in a meeting he was having with other law enforcement over in Pasco." RP at 254.

The jury returned a guilty verdict. Mr. Rodrigues appeals.

ANALYSIS

For the first time on appeal, Mr. Rodrigues argues that Officer Muai's reference to the "regional gang intelligence meeting" was propensity evidence, inadmissible under ER 404(b). He argues that the leading question the prosecutor posed to "get over this hump," in the court's parlance, "only strengthened the implication of gang affiliation." Br. of Appellant at 1. Appellate counsel may be correct that the follow up question did not undo whatever harm might have been caused by the passing reference. But the trial court was never presented with ground for an objection or asked to take any action that it refused to take. The issue was not preserved.

"RAP 2.5(a) states the general rule for appellate disposition of issues not raised in the trial court: appellate courts will not entertain them." *State v. Guzman Nunez*, 160 Wn. App. 150, 157, 248 P.3d 103 (2011) (citing *State v. Scott*, 110 Wn.2d 682, 685, 757 P.2d 492 (1988)), *aff'd*, 174 Wn.2d 707, 285 P.3d 21 (2012). "The rule serves the goal of judicial economy by enabling trial courts to correct mistakes and thereby obviate the needless expense of appellate review and further trials, facilitates appellate review by ensuring that a complete record of the issues will be available, and prevents adversarial

unfairness by ensuring that the prevailing party is not deprived of victory by claimed

errors that he had no opportunity to address." *State v. Stoddard*, 192 Wn. App. 222, 227,

366 P.3d 474 (2016).

Mr. Rodrigues argues that the issue *was* preserved, either by a pretrial motion in

limine or by an objection that, having been made once, did not have to be renewed. The

record does not support his position.

Mr. Rodrigues made a handful of pretrial motions in limine, one of which was to

exclude any reference to "lookouts" who might have been acting for Mr. Rodrigues at the

Motel 6:

> <u>Exclude testimony that Officers observed persons they suspected to be
> acting as lookouts at the Motel 6 prior to the alleged pursuit.</u> ER 401; ER
> 402; ER 403; ER 404(b). The pursuit occurred at a separate location. It is
> unknown whether the persons were acting as lookouts, and if they were,
> what purpose or for whom they were acting as lookouts. In the absence of
> such information, any testimony regarding lookouts is nonprobative. It is
> also unfairly prejudicial because it unfairly invites the jury to speculate that
> the lookouts were for Mr. Rodrigue[s] and that he is involved in criminal
> activity such that he would need lookouts.

Clerk's Papers (CP) at 27.

After hearing argument of the motion, the court reserved ruling:

> THE COURT: Well, I'm sorry, I have to reserve on this and instruct
> both sides not to mention in opening statements. I'm going to need to hear
> what that officer observed before I'll allow him to give an opinion that
> these people appeared to be lookouts.

RP at 17.  The State did not thereafter offer evidence of lookouts.  The motion in limine would not have excluded testimony about the name of the regional law enforcement meeting if it had been granted, and it wasn't granted.

Mr. Rodrigues also argues that he made an objection, and the court having ruled, he "'should not be required to *again* raise the issue in front of the jury at the risk of making comments prejudicial to his cause.'"  Reply Br. at 3 (quoting *State v. Sullivan,* 69 Wn. App. 167, 170, 847 P.2d 953 (1993)).  Defense counsel did not identify any basis for an objection, let alone ER 404(b); he raised a concern: "I'm very concerned about where this is going as far as his gang membership."  RP at 167.  When the prosecutor responded that gang membership was not where he was going, defense counsel withdrew any objection, stating, "Okay.  Never mind.  I'm sorry."  RP at 168.  *And see State v. Fredrick*, 45 Wn. App. 916, 922, 729 P.2d 56 (1986) (appeals court declined to review admission of evidence under ER 404(b) because appellant failed to state objection was based on ER 404(b)).

Nor did the trial court rule against defense counsel.  If anything, because the trial court told the prosecutor, "Go ahead and ask a leading question so that we can get over this hump," RP at 168, the implication is that the court understood defense counsel's concern.

No. 37067-4-III
*State v. Rodrigues*

The conviction is affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Siddoway, A.C.J.

WE CONCUR:

_____
Staab, J.

_____
Fearing, J.

8